Christopher THOMPSON, Plaintiff–
Appellee and Cross Appellant,

v.

SHELTER MUTUAL INSURANCE COM-
PANY and Shelter General Insurance
Company, Defendants–Appellants and
Cross–Appellees.

No. 90CA1628.

Colorado Court of Appeals,
Div. II.

Dec. 19, 1991.

As Modified on Denial of Rehearing
Jan. 23, 1992.

Certiorari Granted Aug. 3, 1992.

Cross–Petition for Certiorari
Denied Aug. 3, 1992.

Caplin & Hugen, Brian K. Hugen, Den-
ver, for plaintiff-appellee and cross-appel-
lant.

Greengard Senter Goldfarb & Rice,
Thomas S. Rice, Peter H. Doherty, Denver,
for defendants-appellants and cross-appel-
lees.

Opinion by Judge JONES.

Defendants, Shelter Mutual Insurance
Company and Shelter General Insurance
Company, appeal from a summary judg-
ment entered by the trial court in favor of
plaintiff, Christopher Eric Thompson. In
that judgment, the court concluded that
defendants must provide $50,000 in under-
insured motorist coverage, in addition to
$50,000 paid by a third party's liability in-
surance company, for damages suffered by
plaintiff in an automobile accident. Plain-
tiff cross-appeals that portion of the judg-
ment in which the trial court held that
underinsured motorist benefits, included in

several policies under which plaintiff was insured, cannot be added together, or "stacked," to cover the total damages plaintiff suffered.

We determine that the language of the policy is unambiguous and that the trial court improperly allowed $50,000 pursuant to the underinsured motorist provision· of the insurance policy. However, we nevertheless reverse the judgment of the trial court because we determine that the language of the policy is void as against public policy and, therefore, unenforceable.

The facts are largely stipulated. Plaintiff was involved in a motor vehicle accident with a third party. The third party's liability insurance company paid plaintiff for the bodily injury he suffered up to the third party's policy limits of $50,000. At the time of the accident, plaintiff was operating a Nissan automobile insured by defendants (Nissan policy). He was also insured by defendants under five other motor vehicle insurance policies.

Plaintiff sought to collect for damages he had suffered in excess of $50,000 pursuant to the underinsured motorist provisions in his Nissan policy. He sought such additional recovery by adding together, or "stacking," the underinsured motorist provisions from the five other policies under which he was insured by defendants with that in the Nissan policy, all of which totaled $200,000 in underinsured motorist benefits. Defendants denied plaintiff's request for payment on the grounds that, according to the language of the policies, no underinsured motorist benefits were available for plaintiff's claims, even under the Nissan policy alone.

Plaintiff filed a complaint for declaratory judgment against defendants in district court. Each party filed a motion for summary judgment after stipulating to the facts. The trial court held that the underinsured motorist benefits from the policies under which plaintiff was insured by defendants could not be "stacked" together. The court also concluded that not enough facts were present in the record to allow it to determine whether plaintiff was entitled to $50,000 in underinsured motorist benefits under the Nissan policy, in addition to the $50,000 received from the third party insurance company.

The respective parties then filed motions for clarification or reconsideration. During a hearing on these motions, the court ruled from the bench that $50,000 of underinsured motorist benefits were available under the Nissan policy with defendants, in addition to the $50,000 that plaintiff had already received from the third party insurance company, but did not state a basis for this ruling.

### I.

Defendants contend that the trial court erred by holding that plaintiff was entitled to $50,000 in underinsured motorist benefits pursuant to the Nissan insurance policy. They argue that the actual policy language is clear and unambiguous in prohibiting such benefits in this case. Plaintiff argues that the policy language is ambiguous and that it must be interpreted, in the light most favorable to plaintiff, as allowing underinsured motorist benefits here. We conclude that the Nissan policy unambiguously precludes an underinsured motorist award here.

The policy provisions in question state in relevant part as follows:

(4) Underinsured motor vehicle means:

(a) an insured motor vehicle when the sum of the limits of liability of the auto bodily injury liability insurance coverage or bonds on such vehicle is less than the limits of liability of the uninsured motorists *coverage carried by an insured* . . . .

(5) Our maximum liability under the uninsured motorists coverage provided shall be the lesser of:

(a) the difference between the limit of uninsured motorists *coverage provided* and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury. . . . (emphasis added)

Plaintiff argues that the phrases "coverage carried by an insured" and "coverage provided" are ambiguous and that, by vir-

tue of being terms in adhesion contracts, they should be construed in favor of the insured. He claims that by construing these terms in plaintiff's favor, the underinsured motorist benefits from all six policies under which plaintiff is insured by defendants should be added together, for a total of $200,000. This result would cause the limits of the third party's insurance liability, at $50,000, to be *less* than the total limits of liability of plaintiff's underinsured motorist coverage, at $200,000, and therefore, plaintiff would be eligible for underinsured motorist benefits of $150,000, including $50,000 from the Nissan policy, in accordance with the policy language.

Thus, plaintiff's argument that he is entitled to an additional $50,000 in underinsured motorist benefits from the Nissan policy turns on whether plaintiff can add together, or stack, the underinsured benefits from the six policies under which he is insured by defendant. If plaintiff cannot stack together all of the underinsured motorist benefits of his policies, then he is not entitled to $50,000 in underinsured motorist benefits under the Nissan policy because the third party liability insurance limit would not be "less than the limits of liability of the uninsured motorist coverage carried by an insured," so as to allow the underinsured motorist benefits to become effective.

The dispositive issue thus becomes whether the underinsured motorists benefits from the six policies under which plaintiff is insured may be stacked. We conclude that the effect of the operative language in the Nissan policy is to unambiguously preclude stacking of plaintiff's underinsured motorist benefits.

The relevant provision in question is found in the insurance contract under the heading "Conditions," and states:

OTHER AUTO INSURANCE IN THE COMPANY

With respect to *any* occurrence, accident, death, or loss *to which this and any other auto insurance policy issued to you by us also applies,* the *total limit* of our liability under all these policies won't exceed the highest applicable limit of liability or benefit amount under any one policy. (emphasis added)

Plaintiff argues that this policy provision allows stacking. Defendants, on the other hand, maintain that the provision is clear and unambiguous in stating that, should an insured have more than one policy with the defendants which may cover an accident or incident, the total limit of liability by the defendants as to all policies would be equal to the total limit of liability as made applicable under the highest limit of any single policy. They argue that the effect of the provision is that stacking cannot occur. While we agree with plaintiff that the provision does not state specifically that stacking is precluded, we also agree with defendants that, as applicable here, the effect of the provision is, nevertheless, to prevent stacking from occurring by limiting defendants' liability.

When we read the "total limit" language of the "other auto insurance" provision *in pari materia* with the language in the "underinsured motor vehicle" provision and the "limits of liability" provision which speaks to the maximum liability under the underinsured motorist coverage, we conclude that the policy prohibits plaintiff from collecting more than the maximum limit of underinsurance coverage under a single policy. It is plain from the language of the Nissan policy that the key factor in calculating underinsured motorist benefits among all of the policies here is the policy limit provision of the Nissan policy. All of the parties agree that the policy limit is $50,000.

We agree with defendants that the language of the Nissan policy is unambiguous. When the definition of uninsured motor vehicle, the uninsured motorist coverage limit of liability, and the provision concerning other automobile insurance in the defendant companies are read together, their plain effect in this case is to deny underinsured motorist coverage to plaintiff.

Even if the five other policies which cover plaintiff can be stacked in this case, the *total limit* of defendants' underinsured motorist liability cannot exceed $50,000 because that is "the highest applicable bene-

fit amount" among the six policies. Thus, when that $50,000 total limit of liability is factored into the calculation for determination of "maximum liability" for the underinsured motorist coverage, the result of the calculation is that there is no difference between the limit of underinsured motorist coverage and the amount that was paid to plaintiff by the third party's liability insurance carrier. Pursuant to the plain language of the policy, if there is no difference between those limits, there can be no coverage as to the underinsured motorist provision.

Hence, we conclude, based only on the language of the Nissan policy, that the trial court properly found that stacking cannot occur under the policy. The necessary consequence of such analysis of the policy language is that plaintiff was not entitled to further payment under the Nissan policy, and thus, the trial court erred in determining that plaintiff should receive $50,000 from defendants in addition to the payment from the third party's liability insurance company.

## II.

■ To the extent that the policy prohibits stacking by limiting defendants' liability, plaintiff contends that the policy is void as against public policy. He claims that by amending the Colorado uninsured motorist statute, § 10-4-609, C.R.S. (1987 Repl.Vol. 4A), to add underinsured motorist benefits, see Colo.Sess.Laws 1983, ch. 92, § 10-4-609(4) and (5) at 454-455, the General Assembly demonstrated an intent to expand benefits to provide full recovery for underinsured motorist claims. He further asserts that the limitation on recovery of underinsured motorist benefits in the "Other Auto Insurance In The Company" clause is contrary to the public policy purpose expressed by the General Assembly in amending the statute because it prevents full recovery of underinsured motorist benefits available after stacking. Defendants contend that there is no support for plaintiff's argument.

We agree with plaintiff and, therefore, reverse the trial court's judgment and its

determination that stacking is not permitted under the Shelter policies.

In a series of cases, the Colorado appellate courts have addressed public policy considerations relating to uninsured motorist policy provisions. In *Alliance Mutual Casualty Co. v. Duerson*, 184 Colo. 117, 518 P.2d 1177 (1974), our supreme court held that an "other insurance" clause, similar to the "Other Auto Insurance In The Company" clause here, which unambiguously prevented stacking, was not repugnant to the public policy expressed by the *uninsured motorist statute*. The *Alliance* court found no expression of legislative intent requiring full indemnification from all insurers of *uninsured* motorist victims and, therefore, held that there was nothing offensive to public policy in an anti-stacking clause. The court concluded that, as to uninsured motorist coverage, the legislative intent is satisfied if policy coverage provides that one injured by an uninsured motorist will be compensated at least to the same extent as one injured by a motorist insured in compliance with the statutorily mandated minimums.

The Supreme Court's reasoning in *Alliance* was followed in *Arguello v. State Farm Mutual Auto Insurance Co.*, 42 Colo.App. 372, 599 P.2d 266 (1979). There, a division of this court found that an insurance policy provision preventing stacking of uninsured motorist benefits did not violate the purpose behind the uninsured motorist statute, and held that: "So long as a policy assures payment of the statutory minimum, a limitation is not repugnant to the statute."

In both *Alliance* and *Arguello*, the uninsured motorist statute in question was similar to the statute currently in effect, with the exception that the current version includes provisions for underinsured motorist coverage. In both cases, the courts upheld uninsured motorist anti-stacking policy provisions as enforceable under the uninsured motorist statute.

Our courts have not specifically addressed the General Assembly's intent in enacting the underinsured motorist provisions of the uninsured motorist statute.

However, in *Kral v. American Hardware Mutual Insurance Co.*, 784 P.2d 759 (Colo. 1989), the court considered the uninsured and underinsured motorist statute in its entirety and discerned a strong legislative intent to permit insureds who purchase such coverage to receive the benefits thereof to the extent necessary for full compensation for loss caused by a negligent motorist. The *Kral* court held that, to the extent that enforcement of a release-trust agreement would result in the insured's inability to obtain full compensation for loss sustained, the agreement would directly violate legislative policy and would, therefore, be unenforceable.

In support of their limitations on recovery of underinsured motorist benefits, defendants urge us to take notice of our decision in *American Standard Insurance Co. v. Ekeroth*, 791 P.2d 1220 (Colo.App. 1990), in which it was held that insurance policy provisions prohibiting the stacking of liability coverages are not void as against public policy. However, the holding in *Ekeroth* applies to the public policy supporting statutorily mandated liability coverage and is entirely different from public policy concerns fostering the promulgation of underinsured motorist protection, the implications of which we are called upon here to consider.

Likewise, we distinguish *Terranova v. State Farm Mutual Automobile Insurance Co.*, 800 P.2d 58 (Colo.1990), in which our supreme court decided that the insurer could restrict the availability of an insured's own underinsured motorist benefits when the insured recovered under the liability provisions of her policy after having been injured in her insured vehicle when it was being operated by a permissive driver. In the case here, we do not consider the insured's ability to recover her own liability benefits in conjunction with her underinsured motorist benefits. Rather, we undertake to determine, in a case of first impression, whether a limitation on recovery of underinsured benefits is void as against public policy when such recovery is necessary to compensate fully an insured for injuries received from an underinsured third party.

Several other state courts have examined the public policy concerns underlying the promulgation of underinsured motorist legislation. These courts have recognized that different policy objectives are associated with uninsured and underinsured motorist legislation.

In general, courts that have recently considered underinsured motorist anti-stacking provisions in insurance policies have concluded that underinsured motorist benefits may stack, despite such anti-stacking provisions, where there is no specific statutory bar to stacking the underinsured motorist benefits. *See State Farm Mutual Auto Insurance Co. v. Fox*, 541 So.2d 1070 (Ala. 1989); *Brown v. State Farm Mutual Auto. Insurance Co.*, 163 Ariz. 323, 788 P.2d 56 (1989); *Nationwide Insurance Co. v. Gode*, 187 Conn. 386, 446 A.2d 1059 (1982); *Veach v. Farmers Insurance Co.*, 460 N.W.2d 845 (Iowa 1990); *Jiminez v. Foundation Reserve Insurance Co.*, 107 N.M. 322, 757 P.2d 792 (1988); *Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 382 S.E.2d 759 (1989); *State Auto Mutual Insurance Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990); *State Farm Mutual Automobile Insurance Co. v. Hancock*, 164 Ga.App. 32, 295 S.E.2d 359 (1982); *Wincek v. U.S. Fidelity & Guaranty Co.*, 28 Mass.App.Ct. 901, 545 N.E.2d 617 (1989); *Tegtmeyer v. Snellen*, 791 S.W.2d 737 (Mo.App.1990). We adopt and, hereinafter generally reflect, the rationale of these cases, which we believe is more firmly based in reason than that underlying the results in those cases from the minority of states that have not permitted stacking. *Cf. Nationwide Mutual Insurance Co. v. Scarlett*, 116 Idaho 820, 780 P.2d 142 (1989); *Charley v. Farmers Mutual Insurance Co. of Nebraska*, 219 Neb. 765, 366 N.W.2d 417 (1985); *Benson v. Rosler*, 19 Ohio St.3d 41, 482 N.E.2d 599 (1985).

The essential rationale upon which the majority courts' decisions turn is that their legislatures promulgated underinsured motorist legislation, in addition to existing uninsured motorist provisions mandating minimum levels of coverage for injured in-

sureds, with the intent of increasing, or maximizing, the indemnification of injured insureds. *See Brown v. State Farm Mutual Automobile Insurance Co., supra; Veach v. Farmers Insurance Co., supra; State Automobile Mutual Insurance Co. v. Youler, supra.*

Not unlike the legislatures of other states, our General Assembly has promulgated uninsured motorist legislation to provide Colorado insureds with a minimum amount of coverage, "in limits for bodily injury or death" caused by uninsured motorists, Section 10–4–609(1), C.R.S. (1987 Repl.Vol. 4A), and underinsured motorist legislation, to speak to the "amount of damages sustained, but not recovered." Section 10–4–609(4) and (5), C.R.S. (1987 Repl.Vol. 4A). By mandating the availability of a level of underinsured motorist insurance in excess of the minimum limits of insurance protection required against uninsured motorists, the General Assembly has indicated an intent to maximize recovery at least in excess of minimum amounts.

In addition, the General Assembly has indicated its intent to limit the insurer's maximum liability for underinsured motorist coverage to the insured's underinsured motorist benefits in excess of amounts paid by legally liable parties to the insured for the amount of damages sustained but not recovered. Sections 10–4–609(5)(a) and (b), C.R.S. (1987 Repl.Vol. 4A). Such a provision expresses a purpose to avoid permitting double recovery on the part of the insured, while allowing recovery of amounts not otherwise covered by a legally liable party to the extent that the insured's benefits will cover "damages sustained" by the injured insured.

We conclude that, by amending the uninsured motorist statute with the express intent that the injured insured should be able to recover the "amount of damages sustained, but not recovered," § 10–4–609(5)(b), C.R.S. (1987 Repl.Vol. 4A), the General Assembly has manifested the intent to maximize indemnification of an injured motorist who purchases underinsured motorist coverage. *Kral v. American Hardware Mutual Insurance, Co., supra.*

*See Veach v. Farmers Insurance Co., supra.* Thus, we hold that the preeminent public policy of this state in underinsured cases is that the injured insured be fully compensated for his or her damages not compensated by a negligent tortfeasor, up to the limits of all underinsured motorist coverage he or she has purchased.

The public is entitled to a common sense belief that the General Assembly intended to assure that if premiums are paid in order to provide full indemnification, not only when another driver is negligent but when that driver is underinsured, then such coverage is not to be thwarted by anti-stacking policy language which dilutes and defeats such spirit and intent. Thus, "[o]nce the insured elects to pay for the underinsured motorist coverage, he or she is protected by the public policy of full indemnification." *State Automobile Mutual Insurance Co. v. Youler, supra* (citing *Hoeschen v. South Carolina Insurance Co.,* 378 N.W.2d 796 (Minn.1985)). *See Jiminez v. Foundation Reserve Insurance Co., supra* (an insured who pays premiums for multiple coverages may reasonably expect to be compensated by means of stacking for losses suffered). *See generally* Annot., *Combining or "Stacking" Uninsured Motorist Coverages Provided In Separate Policies Issued By Same Insurer To Same Insured,* 25 A.L.R. 4th 6 (1983) (note especially section 6 on underinsured motorist coverage). *See also Government Employees Insurance Co. v. Farmer,* 330 So.2d 236 (Fla.Dist.Ct.App. 1976), *cert. denied,* 341 So.2d 291 (Fla. 1976), *cert. denied,* 342 So.2d 1101 (Fla. 1977).

Moreover, reason is hardly served by an interpretation which takes account of the essential purposes of underinsured motorist benefits, namely to indemnify fully citizens against uninsured tortfeasors and those underinsured, and then allows limits to that coverage, after premiums have been paid to insure that coverage, such that, again, the limits of the tortfeasor's deficient insurance coverage play a predominant role in determining the extent to which the insured's damages will not be covered. The remedy to the evil sought to

be eliminated is not simply to relegate to the evil full entry through the side door. *See State Farm Mutual Automobile Insurance Co. v. Hancock, supra* (in finding statute allows stacking of uninsured benefit policies, the court held it was designed to protect insured as to actual loss within "limits of the *policy or policies*" under which he is covered. (emphasis in original)).

■ In addition, the purpose of uninsured and underinsured motorist coverage is "for the protection of *persons* insured thereunder." Section 10-4-609(1), C.R.S. (1987 Repl.Vol. 4A) (emphasis added).

The General Assembly's intent that underinsured motorist coverage attach to a person, rather than a vehicle, is reflected here by the following provision in the defendant's insurance policy:

COVERAGE E–UNINSURED MOTORIST (INCLUDING UNDERINSURED MOTORIST PROTECTION)

We will pay damages for bodily injury which an insured or the insured's legal representative is legally entitled to recover from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the uninsured motor vehicle or underinsured motor vehicle.

This clause indicates that the coverage does not attach to a vehicle but, instead, as plaintiff correctly argues, provides the insured with protection if he is injured by an underinsured motorist whether he is injured while in a vehicle, while on foot, or elsewhere. We agree with plaintiff that, because underinsured motorist benefits are personal, it is incongruous for defendants to limit plaintiff's recovery to a single policy under which plaintiff has contracted for *liability insurance on a vehicle.*

Here, plaintiff has contracted with defendants for underinsured motorist coverage under five insurance policies and is eligible for underinsured motorist benefits under his son's insurance policy. Six separate premiums were paid for plaintiff's underinsured motorist benefits under six separate policies issued by defendants. Defendants' attempt to limit plaintiff's recovery of the underinsured motorist benefits for which he has paid is adverse to the personal nature of underinsured motorist benefits.

■ When a provision of an insurance contract violates public policy because it attempts to dilute, condition, or unduly limit statutorily mandated coverage, it may be declared void and unenforceable. *See Terranova v. State Farm Mutual Automobile Insurance Co., supra; Chacon v. American Family Mutual Insurance Co.,* 762 P.2d 732 (Colo.App.1988).

In accordance with the foregoing analysis, we hold that anti-stacking language in automobile insurance policies which attempts to limit underinsured motorist benefits to an insured covered simultaneously by two or more policies is adverse to the law and public policy of this state and is void and unenforceable. Specifically, here, the language of defendants' "Other Auto Insurance In The Company" clause is declared void and unenforceable.

■ We hold that an insured covered at the same time by two or more contracts providing underinsured motorist benefits may recover, in any covered accident, incident, or occurrence, under all such contracts, up to the aggregated or stacked limits of such contracts, less any payment to the insured from any third party or its liability carrier, up to the amount of determined damages covered.

Accordingly, the judgment of the trial court is reversed, and the cause is remanded for entry of a declaratory judgment that plaintiff shall be entitled to underinsured motorist benefits of up to $150,000 as to the six policies of which he is a beneficiary.

TURSI and ROTHENBERG, JJ., concur.