SHELTER MUTUAL INSURANCE COMPANY and Shelter General Insurance Company, Petitioners,

v.

Christopher THOMPSON, Respondent.

No. 92SC104.

Supreme Court of Colorado,
En Banc.

May 24, 1993.

---

Greengard Senter Goldfarb & Rice, Thomas S. Rice, Mark C. Overturf, Peter H. Doherty, Denver, for petitioners.

Caplin & Hugen, Brian K. Hugen, Denver, for respondent.

Anderson, Campbell and Laugesen, P.C., Richard W. Laugesen, Denver, for amicus curiae State Farm Mut. Auto. Ins. Co.

Wilcox & Ogden, P.C., Ralph Ogden, Kidneigh & Kaufman, Stephen C. Kaufman, Denver, for amicus curiae The Colorado Trial Lawyers Ass'n.

Justice VOLLACK delivered the Opinion of the Court.

Petitioners Shelter Mutual Insurance Company and Shelter General Insurance Company (referred to jointly as Shelter) petition from the court of appeals opinion in *Thompson v. Shelter Mutual Insurance Co.*, 835 P.2d 518 (Colo.App.1991). The court of appeals held that "anti-stacking language in automobile insurance policies which attempts to limit underinsured motorist benefits to an insured covered simultaneously by two or more policies is adverse to the law and public policy of this state and is void and unenforceable." *Id.* at 524. We reverse.

I.

The parties stipulated to the following facts. Christopher Eric Thompson (Thompson) purchased six separate motor vehicle insurance policies for six separate vehicles with Shelter. These policies contained the following limits on uninsured/underinsured motorist benefits for each owned vehicle:

    1. 1984 Nissan ($50,000) (the vehicle involved in the September 23, 1987, collision);

    2. 1986 Ford ($50,000);

    3. 1984 Yamaha motorcycle ($25,000);

    4. 1982 Yamaha motorcycle ($25,000);

    5. 1982 Suzuki motorcycle ($25,000);

    6. 1980 Suzuki motorcycle ($25,000).[1]

On September 23, 1987, Thompson was injured in an automobile accident while driving his 1984 Nissan. The driver of the other vehicle involved in the accident was insured by State Farm Insurance. Thompson filed a personal injury claim against the other driver, and settled this claim on May 24, 1989, for the policy limit of $50,000.

On June 6, 1989, after settling with the other driver's insurance carrier, Thompson sought underinsured motorist benefits from Shelter in excess of $50,000. Thompson claimed that his six insurance policies should be combined or "stacked"[2] to provide him with uninsured/underinsured benefits in the amount of $200,000.

On August 9, 1989, Shelter denied Thompson's claim for underinsured motorist coverage, and asserted that the terms of the Shelter policies precluded Thompson

---

1. The 1980 Suzuki motorcycle belonged to Thompson's son, Ingmar. Thompson was listed as an insured under the Shelter policy for this motorcycle.

2. Stacking is defined as "aggregating, combining, multiplying, or pyramiding limits of separate policies providing uninsured and underinsured motorist coverage as provided in section 10–4–609." § 10–4–402, 4A C.R.S. (1992 Supp.).

from recovering any underinsured motorist benefits. The relevant insurance policy provisions state:

## PART IV—UNINSURED MOTORISTS

. . . .

### LIMITS OF LIABILITY

. . . .

(5) **Our** maximum liability under the uninsured motorists coverage provided shall be the lesser of:

(a) the difference between the limit of uninsured motorists coverage provided and the amount paid to the **insured** by or for any person or organization who may be held legally liable for the **bodily injury;** or

(b) the amount of damages sustained, but not recovered.

### OTHER INSURANCE

. . . .

... [I]f the **insured** has other insurance available, the damages shall not exceed the limits of liability of this insurance or of the other insurance, whichever is larger. **We** will not be liable for a greater proportion of any loss to which this coverage applies than the limits of liability of this insurance bear to the sum of the limits of liability of this insurance and any other similar insurance available to the **insured.**

. . . .

### Part VII—CONDITIONS

. . . .

### OTHER AUTO INSURANCE IN THE COMPANY

With respect to any occurrence, accident, death, or loss to which this and any other auto insurance policy issued to you by us also applies, the total limit of our liability under all these policies won't exceed the highest applicable limit of liability or benefit amount under any one policy.

In light of these insurance policy provisions, Shelter reasoned that the underinsured motorist coverage available under Thompson's six policies is equal to the single policy limit of $50,000 applicable to the 1984 Nissan minus any recovery obtained from State Farm. Because Thompson recovered $50,000 from State Farm, Shelter concluded that there remained no underinsured motorist coverage available to Thompson.

Thompson filed a complaint for declaratory relief, and both parties subsequently filed motions for summary judgment. In an August 8, 1990, order, the district court held that the insurance policies could not be stacked. In addition, the district court ruled:

> Whether or not [Thompson] is entitled to any sums under the Shelter policy in excess of the sum of $50,000, which has previously been paid to [Thompson], cannot be determined by the Court without more facts.
>
> ... As to whether or not [Thompson] is entitled to further damages, [Thompson] has the burden of proving damages in excess of $50,000.

Both parties filed motions for clarification and reconsideration. On September 4, 1990, the district court reiterated its holding that the six insurance policies could not be stacked, and also ruled that $50,000 in underinsured motorist coverage, over and above the $50,000 settlement with State Farm, was available to Thompson.

Shelter appealed the district court's ruling that $50,000 in underinsured motorist benefits was available to Thompson, and Thompson cross-appealed the finding that the six insurance policies could not be stacked. The court of appeals found that the district court erred in determining that Thompson could receive $50,000 under the underinsured motorist policy in addition to the $50,000 settlement with State Farm. In addition, the court of appeals held that the prohibitions against stacking in the Shelter insurance policies contravene public policy. The court of appeals further held that

> an insured covered at the same time by two or more contracts providing underinsured motorist benefits may recover, in any covered accident, incident, or occurrence, under all such contracts, up to the aggregated or stacked limits of such con-

tracts, less any payment to the insured from any third party or its liability carrier, up to the amount of determined damages covered.

*Thompson v. Shelter Mut. Ins. Co.*, 835 P.2d 518, 524 (Colo.App.1991). Accordingly, the court of appeals reversed the judgment of the district court, and remanded the case for entry of a declaratory judgment that Thompson shall be entitled to underinsured motorist benefits of up to $150,000.

■ We granted certiorari in this case to determine "whether the court of appeals erred in finding that anti-stacking provisions pertaining to underinsured motorist benefits are void as against public policy, particularly as [this court] has found similar provisions regarding uninsured benefits to be valid."[3] Both this court and the court of appeals have held that anti-stacking provisions in insurance policies providing uninsured motorist coverage do not violate public policy. *See Alliance Mut. Casualty Co. v. Duerson*, 184 Colo. 117, 518 P.2d 1177 (1974); *Arguello v. State Farm Mut. Auto. Ins. Co.*, 42 Colo.App. 372, 599 P.2d 266 (1979). Furthermore, the General Assembly and Colorado courts have included underinsured motorist coverage within the definition of uninsured motorist coverage. *See* § 10–4–609(4), 4A C.R.S. (1983 & 1987); *Kral v. American Hardware Mut. Ins. Co.*, 784 P.2d 759, 764 (Colo.1989); *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 59 n. 1 (Colo.1990). We find, therefore, that the decision of the court of appeals is irreconcilable with the plain language of section 10–4–609, 4A C.R.S. (1979, 1983 & 1987), and existing Colorado case law. We now reverse the decision of the court of appeals.

## II.

### A.

The General Assembly enacted section 10–4–609 in 1979 to provide insurance pro-

tection against injuries and damages caused by financially irresponsible uninsured motorists. Act approved June 22, 1979, ch. 69, sec. 11, 1979 Colo.Sess.Laws 377; *Kral v. American Hardware Mut. Ins. Co.*, 784 P.2d 759, 765 (Colo.1989) ("[T]he General Assembly intended uninsured motorist coverage to provide an insured with benefits to the extent necessary to recover for loss caused by a negligent and financially irresponsible motorist, subject to policy limits."). In 1983, the General Assembly amended section 10–4–609 to include underinsured motorist coverage within the definition of uninsured motorist coverage. Act approved May 4, 1983, ch. 92, sec. 1, 1983 Colo.Sess.Laws 455. Section 10–4–609, as amended, provides in relevant part:

**10–4–609. Insurance protection against uninsured motorists.** (1) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42–7–103(2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; except that the named insured may reject such coverage in writing.

(2) Prior to the time the policy is issued or renewed, the insurer shall offer the named insured the right to obtain

---

**3.** Thompson filed a cross-petition for certiorari on the following issue:

Whether the court of appeals erred in finding that the Shelter insurance contracts by their language and organization as a whole were not ambiguous and erred in holding that

Shelter was not responsible by its contract terms for underinsured motorist benefits to Thompson up to $50,000 over and above the $50,000 received from the third-party tortfeasor's liability insurer.

We declined to grant certiorari on this issue.

higher limits of uninsured motorist coverage in accordance with its rating plan and rules, but in no event shall the insurer be required to provide limits higher than the insured's bodily injury liability limits or one hundred thousand dollars per person and three hundred thousand dollars per accident, whichever is less.

. . . .

(4) *Uninsured motorist coverage shall include coverage for damage for bodily injury or death which an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle.* An underinsured motor vehicle is a land motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident, but the limits of liability for bodily injury or death under such insurance or bonds are:

(a) Less than the limits for uninsured motorist coverage under the insured's policy; or

(b) Reduced by payments to persons other than an insured in the accident to less than the limits of uninsured motorist coverage under the insured's policy.

(5) The maximum liability of the insurer *under the uninsured motorist coverage* provided shall be the lesser of:

(a) The difference between the limit of uninsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or

(b) *The amount of damages sustained, but not recovered.*

§ 10–4–609, 4A C.R.S. (1987) (emphasis added).

■ The legislative history of the 1983 amendments indicates that the General Assembly intended to enable an injured insured to recover for loss caused by an underinsured motorist to the same extent that the injured insured would recover for damages caused by an uninsured motorist. *See Kral,* 784 P.2d at 764. Representative Bath explained the proposed 1983 amendments during the floor debate on March 31, 1983, as follows:

> Right now, under Colorado law, you are frequently better off being hit by someone who has no insurance at all than having your car damaged and your [sic] and suffering personal injury by somebody who has just the minimum amounts of insurance, the situation where they are underinsured, because under the present law, if you have uninsured motorist protection, it does not kick in with someone in an underinsured situation. So this bill is designed to plug that loophole, and there was some evidence at the hearing that a lot of people do not realize that when they are purchasing underinsur——*un*insured motor vehicle protection, that they're not getting underinsured protection as well, so that, again, is a gap that we're attempting to plug.

*Hearing on H.B. 1453 Before the House of Representatives,* 54th Gen.Assembly, 1st Reg.Sess. (Hearing Tape 83–19, Mar. 31, 1983).

Section 10–4–609, as amended, thus includes underinsured motorist coverage within the definition of uninsured motorist coverage, § 10–4–609(4). Under the 1983 amendments, insurers are required to offer a minimum amount of *both* uninsured and underinsured motorist coverage, §§ 10–4–609(1), (4), and to offer increased amounts of *both* uninsured and underinsured coverage in excess of the statutory minimums, §§ 10–4–609(2), (4). Section 10–4–609(5) articulates the maximum liability of the insurer with respect to *both* uninsured and underinsured motorist coverage.[4]

---

**4.** On June 5, 1992, subsequent to the court of appeals decision in this case, the General Assembly amended § 10–4–609 to clarify the intent of the statute with respect to stacking of underinsured motorist benefits. Act approved June 5, 1992, ch. 212, sec. 4, 1992 Colo.Sess.Laws 1759. Section 10–4–609(2) now provides in relevant part:

> A policy may contain provisions which prohibit stacking the limits of more than one uninsured motorist coverage policy as provided in this section, if such provisions are included in a single policy covering multiple vehicles or in multiple policies issued by one insurer or an affiliated insurer, under common ownership or management, to an insured or to a resident relative of such insured.

## B.

Colorado case law has evinced two principles with respect to the issue of stacking uninsured and underinsured motor vehicle coverage. First, both this court and the court of appeals have held that anti-stacking provisions do not violate the public policy underlying the uninsured motorist statute. *Alliance Mut. Casualty Co. v. Duerson*, 184 Colo. 117, 518 P.2d 1177 (1974); *Arguello v. State Farm Mut. Auto. Ins. Co.*, 42 Colo.App. 372, 599 P.2d 266 (1979).[5] Second, Colorado courts have included underinsured motorist coverage within the definition of uninsured motorist coverage, and have therefore refused to distinguish the two types of coverage. *Kral v. American Hardware Mut. Ins. Co.*, 784 P.2d 759 (Colo.1989); *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58 (Colo.1990).

In *Alliance Mutual Casualty Co. v. Duerson*, 184 Colo. 117, 518 P.2d 1177 (1974), this court found that an "other insurance" provision limiting uninsured motorist benefits to one insurance policy did not violate public policy. The claimant in that case, Mary Duerson, was riding as a passenger on a motorcycle, and was struck by an automobile driven by an uninsured motorist. Duerson was insured under two different insurance policies which each limited uninsured motorist coverage to $10,000. First, the driver of the motorcycle was covered by a liability insurance policy with State Farm which provided uninsured motorist protection for passengers. Second, Duerson was also covered by a family automobile liability policy issued to her mother with Alliance Mutual Casualty Company. Duerson sought uninsured motorist benefits from both State Farm and Alliance. State Farm paid Duerson the policy limit of $10,000, but Alliance denied Duerson's claim based upon the "other insurance" provision of the policy. In finding that the "other insurance" clause did not violate public policy, this court reasoned:

> The legislative "declaration of purpose" to the uninsured motorist statute, 1965 Perm.Supp., C.R.S.1963, 17–12–20, expresses no intention to require full indemnification from all insurers of uninsured motorist victims. Rather, the express intent is "to induce and encourage" all motorists to provide for their financial responsibility for the protection of others from financially irresponsible uninsured motorists. Had the legislature intended full indemnification it would not have granted the option of totally rejecting the uninsured motorist coverage.

*Alliance*, 184 Colo. at 123, 518 P.2d at 1180 (footnote omitted).

In *Arguello v. State Farm Mutual Automobile Insurance Co.*, 42 Colo.App. 372, 599 P.2d 266 (1979), the court of appeals applied the rationale of *Alliance* to a case concerning stacking of uninsured motorist benefits. In that case, the Arguellos owned two automobiles, each of which was insured under a separate policy with State Farm. Each policy provided for uninsured motorist coverage in the amount of $15,000. While driving one of their cars, the Arguellos were involved in an accident with

Such provisions shall not prohibit stacking of the uninsured or underinsured portions of a policy issued to an insured and a separate policy covering the insured which was not issued to the insured or a resident relative. For purposes of this subsection (2), underinsured motorist coverage is included in the term "uninsured motorist coverage" pursuant to subsection (4) of this section.

§ 10–4–609(2), 4A C.R.S. (1992 Supp.); *see Hearing on S.B. 92–217 Before the Senate Judiciary Committee* (testimony of Richard Gephardt, Representative of State Farm Insurance Co.), 58th Gen.Assembly, 2d Reg.Sess. (hearing tape 92–32, May 1, 1992).

5. *Alliance* and *Arguello* were decided before the General Assembly amended § 10–4–609 in 1983.

These cases are applicable in the present action, however, because the 1983 amendments added underinsured motorist coverage as part of the definition of uninsured motorist coverage. Furthermore, we find that *Alliance* and *Arguello* are consistent with the 1983 amendments to § 10–4–609. Because the legislature is presumed familiar with existing case law, this precedent is deemed approved. *People v. Davis*, 794 P.2d 159, 181 (Colo.1990) ("When the legislature adopts a statute, we must presume that it acted with an awareness of prior decisional law on the subject matter under inquiry."), *cert. denied*, 498 U.S. 1018, 111 S.Ct. 662, 112 L.Ed.2d 656 (1991).

an uninsured motorist which caused injuries to Mr. Arguello. The parties stipulated that Mr. Arguello's damages exceeded $30,000. State Farm paid the Arguellos the $15,000 policy limit for the one car, but refused to stack the uninsured motorist benefits of the second car, based upon an anti-stacking provision in the policy. The Arguellos argued to the court of appeals that, because they paid two separate premiums for uninsured motorist coverage, Mr. Arguello should be compensated by State Farm under both policies, for a total of $30,000. The court of appeals disagreed, and found that, "[s]o long as a policy assures payment of the statutory minimum, a limitation is not repugnant to the statute." *Id.* at 374, 599 P.2d at 268. Further, the court noted that, "[h]ad plaintiffs desired more extensive coverage, they could have purchased more than the statutory minimum of uninsured motorist insurance." *Id.*

In *American Standard Insurance Co. v. Ekeroth*, 791 P.2d 1220 (Colo.App.), *cert. denied*, 797 P.2d 1299 (Colo.1990),[6] the court of appeals held that an insurance policy provision which precluded stacking of liability coverages was not void in violation of public policy. In *Ekeroth*, the insured owned three vehicles, which were each insured under identical liability coverage for $25,000 with American Standard Insurance Company of Wisconsin (American). Each of the policies contained a limitation of liability provision which stated: " 'Two or More Cars Insured. The total limit of our liability under all policies issued to you by us shall not exceed the highest limit of liability under any one policy.' " *Ekeroth*, 791 P.2d at 1221. The court of appeals rejected Ekeroth's argument that American was liable for $25,000 on each policy, and concluded that the limit of liability provision did not violate public policy. The court of appeals reasoned: "American has limited its total liability under all three policies to the requisite statutory minimum. Since each policy complies

with the insured's statutory obligation, we perceive no conflict with §§ 10–4–705 and 10–4–706 [the relevant statutory sections]." *Id.* at 1222.

■ Since the 1983 statutory changes to the Uninsured Motorist Act, both this court and the court of appeals have interpreted section 10–4–609 as providing the same coverage for insureds who are injured by either an uninsured or an underinsured motorist. In *Kral v. American Hardware Mutual Insurance Co.*, 784 P.2d 759 (Colo. 1989), this court held that "the General Assembly intended uninsured motorist coverage to provide an insured with benefits to the extent necessary to recover for loss caused by a negligent and financially irresponsible motorist, subject to [insurance] policy limits." *Id.* at 765. We explained that this legislative policy applies to *both* uninsured and underinsured motorist coverage: "Subsection (4) [of section 10–4–609] permits an injured insured to recover for loss caused by an *underinsured motorist to the same extent the insured would recover if the underinsured motorist had no insurance.*" *Id.* at 764 (emphasis added).

Similarly, in *Terranova v. State Farm Mutual Automobile Insurance Co.*, 800 P.2d 58 (Colo.1990), we again noted that the General Assembly made no distinction between uninsured and underinsured motorist coverage in section 10–4–609. We stated in *Terranova* that "[t]he General Assembly has defined uninsured motorist coverage to include coverage for drivers of underinsured vehicles. [§] 10–4–609(4), 4A C.R.S. (1987).... Because the statutory definition of uninsured motorist coverage includes underinsured vehicles, we do not distinguish between the two types of coverage for the purposes of this opinion." *Terranova*, 800 P.2d at 59 n. 1. In *Terranova*, this court also addressed the legislative purpose of uninsured motorist benefits under the amended version of section 10–4–609. We stated:

---

**6.** Although *Ekeroth* concerns liability coverage, rather than uninsured or underinsured motorist coverage, we find that the holding from *Ekeroth*—that anti-stacking insurance provisions do

not violate public policy—is applicable in the context of uninsured and underinsured motorist coverage.

The purpose of the uninsured motorist coverage mandated by section 10–4–609 is to compensate an innocent insured for loss, subject to the insured's policy limits, caused by financially irresponsible motorists. The legislative intent is satisfied by coverage that compensates a person injured by an uninsured motorist to the same extent as one injured by a motorist who is insured in compliance with the law. Section 10–4–609 does not require full indemnification of losses suffered at the hands of uninsured motorists under all circumstances.

*Id.* at 61 (citations omitted) (emphasis added).

Therefore, both this court and the court of appeals have found that an injured insured may recover for damages caused by an underinsured motorist to the same extent that the insured would recover from an uninsured motorist, *see Kral,* 784 P.2d 759; *Terranova,* 800 P.2d 58, and that anti-stacking provisions are not void in violation of public policy in the uninsured motorist context, *see Alliance,* 184 Colo. 117, 518 P.2d 1177; *Arguello,* 42 Colo.App. 372, 599 P.2d 266. Consideration of this decisional law and section 10–4–609 leads us to conclude that anti-stacking insurance provisions do not violate public policy in the underinsured motorist context.

### C.

In the present case, Shelter argues that the court of appeals erred by distinguishing the legislative intent and underlying public policy of uninsured motorist coverage from that of underinsured motorist coverage. Although the court of appeals recognized that Colorado appellate courts have held that anti-stacking provisions do not violate the public policy expressed in the *uninsured motorist statute, see Alliance,* 184 Colo. 117, 518 P.2d 1177; *Arguello,* 42 Colo.App. 372, 599 P.2d 266, the court of appeals nevertheless concluded that insurance provisions limiting recovery of *underinsured motorist benefits* contravene public policy. *Thompson v. Shelter Mut. Ins. Co.,* 835 P.2d 518, 524 (Colo.App. 1991).

In holding that prohibitions against stacking of underinsured motorists benefits, as opposed to uninsured motorist benefits, are void, the court of appeals reasoned as follows:

[O]ur General Assembly has promulgated uninsured motorist legislation to provide Colorado insureds with a minimum amount of coverage, "in limits for bodily injury or death" caused by uninsured motorists, Section 10–4–609(1), C.R.S. (1987 Repl.Vol. 4A), and underinsured motorist legislation, to speak to the "amount of damages sustained, but not recovered." Section 10–4–609(4) and (5), C.R.S. (1987 Repl.Vol. 4A). *By mandating the availability of a level of underinsured motorist insurance in excess of the minimum limits of insurance protection required against uninsured motorists, the General Assembly has indicated an intent to maximize recovery at least in excess of minimum amounts.*

*Thompson,* 835 P.2d at 523 (emphasis added).

The court of appeals also relied upon section 10–4–609(5)(b) to distinguish the legislative intent and the public policy of underinsured from uninsured motorist coverage:

We conclude that, by amending the uninsured motorist statute with the express intent that the injured insured should be able to recover the "amount of damages sustained, but not recovered," § 10–4–609(5)(b), C.R.S. (1987 Repl.Vol. 4A), the General Assembly has manifested the intent to maximize indemnification of an injured motorist who purchases underinsured motorist coverage.

*Id.*

Based upon these statements of legislative intent, the court of appeals held "that the preeminent public policy of this state in underinsured cases is that the injured insured be fully compensated for his or her damages not compensated by a negligent tortfeasor, up to the limits of all underinsured motorist coverage he or she has purchased." *Id.*

We find that the distinction drawn by the court of appeals between underinsured and uninsured motorist coverage is contrary to both the express language of section 10–4–609 and existing Colorado case law. Section 10–4–609, as amended in 1983, includes underinsured motorist coverage within the definition of uninsured motorist coverage. We have previously held that the General Assembly intended to treat underinsured motorist coverage in the same manner as uninsured motorist coverage. *See Kral*, 784 P.2d 759; *Terranova*, 800 P.2d 58.

Further, we disagree with the court of appeals conclusion that, by amending the uninsured motorist statute to include section 10–4–609(5)(b) ("amount of damages sustained, but not recovered"), the General Assembly "manifested the intent to maximize indemnification of an injured motorist who purchases *underinsured* motorist coverage." *Thompson*, 835 P.2d at 523 (emphasis added). Rather, sections 10–4–609(5)(a) and (b), which must be read together, apply to *both* uninsured and underinsured motorist coverage. *State Bd. of Medical Examiners v. Saddoris*, 825 P.2d 39 (Colo.1992) (statutes must be construed as a whole to give consistent, harmonious, and sensible effect to all their parts). Accordingly, we disagree with the court of appeals finding that the underlying legislative policy of underinsured motorist coverage differs from that of uninsured motorist coverage.

█ We concluded in *Alliance* and *Arguello* that anti-stacking provisions are permissible in the uninsured motorist context. In the present case, our review of section 10–4–609 and the relevant case law leads us to conclude that an anti-stacking provision pertaining to underinsured motorist coverage does not violate public policy. We hold that Thompson is not entitled to stack the benefits of the six separate policies. The judgment of the court of appeals is reversed.