FARMERS INSURANCE EXCHANGE, Plaintiff–Appellee,

v.

Gail STAR, Defendant–Appellant.

No. 96CA0793.

Colorado Court of Appeals, Div. III.

July 24, 1997.

As Modified on Denial of Rehearing Aug. 21, 1997.

Certiorari Denied Feb. 23, 1998.

810

Jones, Waters, Bennett, Hessel & Cross, L.L.C., Michael R. Waters, Colorado Springs, for Plaintiff–Appellee.

Lloyd C. Kordick & Associates, Lloyd C. Kordick, Colorado Springs, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

In this declaratory judgment action concerning uninsured motorist coverage, defendant, Gail Star, appeals the summary judgment entered in favor of plaintiff, Farmers Insurance Exchange (Farmers). We affirm.

While driving her motor vehicle, Star observed the vehicle in front of her come to an abrupt stop in moving traffic. She braked and avoided contact with that car. However, moments later a following car struck her vehicle, causing her to suffer serious injuries. The vehicle that had stopped in front of Star left the scene of the accident and the identity of that driver is unknown.

The driver of the following car was insured for liability with a policy limit of $25,000 per person. Star was insured with Farmers for uninsured/underinsured motorist protection (UM/UIM) with a per-person policy limit of $100,000.

Star's civil action against the driver of the following car resulted in a settlement for the $25,000 policy limit. Farmers then paid Star $75,000 under her UM/UIM coverage, resulting in a total recovery of $100,000.

Thereafter, Star sought arbitration concerning the UM/UIM coverage, claiming that Farmers' payment of $75,000 was attributable to the *under* insured driver of the following car. She further asserted that, because the unknown driver of the vehicle in front of her also was negligent in causing her injuries, and because such person was an *un* insured motorist, Farmers was required to pay her an additional sum under its UM/UIM coverage attributable to the *un* insured, unknown driver.

Farmers then filed this declaratory action asserting that, upon payment of the $75,000, Star's UM/UIM coverage was exhausted. The trial court granted summary judgment in favor of Farmers and this appeal followed.

I.

Star asserts that the trial court erred in enforcing the $100,000 per person UM/UIM limit contained in her policy because the uninsured motorist statute, § 10–4–609, C.R.S. (1994 Repl.Vol. 4A), the Motor Vehicle Financial Responsibility Act, § 42–7–101, et seq., C.R.S. (1996 Cum.Supp.), and the pro rata liability statute, § 13–21–111.5, C.R.S. (1987 Repl.Vol. 6A), all require that Star's UM/UIM coverage must be multiplied by the number of uninsured or underinsured drivers causing an accident. We are not persuaded.

Star's insurance policy with Farmers contains language concerning UM/UIM coverage limits as follows:

The limits of liability shown on the Declarations for Uninsured Motorist apply to uninsured motorist coverage, including un-

derinsured motorist coverage as defined in Additional Definition 3b, subject to the following:

1. The uninsured motorist bodily injury limit for "each person" is the maximum we will pay for all damages resulting from bodily injury sustained by one person in any one accident or occurrence.

. . . .

4. The maximum we will pay an insured person for damages caused by an underinsured motorist as defined in Additional Definition 3b shall be no more than the extent the uninsured motorist bodily injury limit exceeds the sum of the amounts of all liability bonds or insurance policies available to all parties held to be liable for the accident. We will pay under this coverage only after the limits of all such liability bonds or policies have been exhausted by the payment of settlements or judgments.

. . . .

6. These Limits of Liability apply regardless of the number of policies, insured persons, vehicles insured, claims made, claimants, or vehicles involved in the occurrence.

By its plain language, the policy provides that the limit of liability for uninsured motorist coverage includes both uninsured and underinsured motorist liability within that single limit. Further, the bodily injury limit designated is the most Farmers will owe for all damages sustained by one person in any one accident.

In addition, payment up to the per-person coverage limit of $100,000 will be made to "each person" who has sustained damages arising out of his or her bodily injury. The "each person" limit applies regardless of the number of uninsured or underinsured vehicles causing the accident.

Finally, the maximum payable will not exceed the policy limit less the sum of all liability limits available to all parties held to be liable for the accident.

A.

Although Star concedes that the UM/UIM language of the policy is unambiguous, she nevertheless argues that it violates public policy because it contravenes the uninsured motorist statute, § 10–4–609. We disagree.

▮ Even though a term in an insurance policy may be unambiguous, it will not be enforced if it violates public policy by attempting to dilute, condition, or limit statutorily mandated insurance coverage. *See Terranova v. State Farm Mutual Automobile Insurance Co.*, 800 P.2d 58 (Colo.1990).

Conversely, a policy provision which complies with the specific requirements of applicable statutes *ipso facto* conforms to the public policy codified within those statutes. *See Spaur v. Allstate Insurance Co.*, 942 P.2d 1261 (Colo.App.1996).

When interpreting statutes, we give full effect to the intent of the General Assembly. *Charnes v. Boom*, 766 P.2d 665 (Colo.1988). To determine that intent, we look first to the words used. *People v. Warner*, 801 P.2d 1187 (Colo.1990). If the language of a statute is plain and its meaning is clear and unambiguous, then there is nothing to require construction. *Colorado State Civil Service Employees Ass'n v. Love*, 167 Colo. 436, 448 P.2d 624 (1968); *State Farm Mutual Automobile Insurance Co. v. Tye*, 931 P.2d 540 (Colo.App.1996).

Section 10–4–609(2), C.R.S. (1994 Repl. Vol 4A) sets both per-person and per-accident limits for the uninsured motorist coverage an insurer is required to provide to an insured. *See Shean v. Farmers Insurance Exchange*, 934 P.2d 835 (Colo.App.1996). Specifically, § 10–4–609(2) provides that *"in no event shall the insurer be required to provide limits higher than the insured's bodily injury liability limits or one hundred thousand dollars per person and three hundred thousand dollars per accident, whichever is less."* (emphasis added)

Section 10–4–609(5), C.R.S. (1994 Repl.Vol. 4A) then provides that the maximum liability of the insurer under the uninsured motorist coverage provided shall be the lesser of:

(a) The difference between the limit of uninsured motorist coverage and the

amount paid to the insured by or for *any person* or organization who may be held legally liable for the bodily injury; or

(b) The amount of damages sustained, but not recovered. (emphasis added)

■ Thus, under § 10–4–609(2) and § 10–4–609(5), an insurer is not required to pay more than $100,000 per person or $300,000 per accident and is allowed to offset against such limit "the amount paid to the insured by or for *any person* or organization who may be held liable for the injury." (emphasis added) Because, for purposes of statutory construction, "any" may mean "all", *see Carlisle v. Farmers Insurance Exchange*, 946 P.2d 555 (Colo.App.1997), the statute permits aggregation and setoff of all of the insurance amounts paid by all parties who are legally liable for the injury sustained.

■ Star, however, argues that § 10–4–609(4), C.R.S. (1994 Repl. vol. 4A) requires the limits found in § 10–4–609(5) to be applied separately to each underinsured or uninsured driver, thus multiplying the per-person maximum coverage of $100,000 specified in § 10–4–609(2) by the number of uninsured or underinsured drivers who contributed to a single person's injuries in an accident. Therefore, she asserts, because there were two tortfeasors involved in the accident here, the $100,000 per person limit of her UM/UIM policy is multiplied by two, entitling her to coverage of $200,000. We disagree.

Section 10–4–609(4) provides, in pertinent part: "Uninsured motorist coverage shall include coverage for damage for bodily injury or death which an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle." Star asserts that, because the General Assembly used the singular term "*an* underinsured motor vehicle" in § 10–4–609(4), the limits of liability must be interpreted as applying separately to each individual *uninsured* or *underinsured motorist* causing an accident. Star further argues that: "If the legislature had intended that one coverage [should] apply to multiple uninsured or underinsured drivers, it would have used the plural 'uninsured motorists' not the singular 'an uninsured motorist.'" We reject this analysis.

First, § 2–4–102, C.R.S. (1980 Repl.Vol. 1B), addressing construction of singular and plural words in statutes, provides: "The singular includes the plural, and the plural includes the singular." Consequently, to the extent that Star's argument relies on the fact that the General Assembly used the singular "an," we reject it. *See Renck v. Motor Vehicle Division*, 636 P.2d 1294 (Colo.App.1981) (police "officer" includes "officers").

Second, § 10–4–609(4) simply states that uninsured motorist coverage includes underinsured motor vehicles and specifies the circumstances under which an insured driver is nonetheless underinsured for the purpose of calculating coverage. *See also* § 10–4–609(2) (stating that the limits of insurance for uninsured drivers includes underinsured motorist coverage as stated in § 10–4–609(4)); *Shelter Mutual Insurance Co. v. Thompson*, 852 P.2d 459 (Colo.1993). Thus, we perceive nothing in § 10–4–609(4) to alter the plain language of §§ 10–4–609(2) & 10–4–609(5) addressing limits of liability.

We also note that the supreme court has determined that § 10–4–609(5) articulates the maximum liability of the insurer with respect to both uninsured and underinsured motorist coverage. *See Shelter Mutual Insurance Co. v. Thompson, supra; see also Terranova v. State Farm Mutual Automobile Insurance Co., supra* (because the statutory definition of uninsured motorist coverage includes underinsured vehicles, there is no reason to distinguish between the two types of coverage). Thus, to the extent that Star argues that there is significance to the fact that one driver was uninsured and one underinsured, we also reject that contention. *Cf. Shean v. Farmers Insurance Exchange, supra* (the same limits of liability section of uninsured motorist coverage applied regardless of the number of persons injured in any one accident).

Additionally, § 10–4–609 "does not require full indemnification of losses suffered at the hands of uninsured motorists under all circumstances." *Terranova v. State Farm Automobile Insurance Co., supra*, 800 P.2d at 61. To the contrary, an insured is entitled to the benefits of coverage only "to the extent necessary to fully compensate the insured for

the loss, *subject to the limits of the insurance contract.*" *Kral v. American Hardware Mutual Insurance Co.,* 784 P.2d 759, 766 (Colo.1989) (emphasis added); *see Spaur v. Allstate Insurance Co., supra; Shean v. Farmers Insurance Exchange, supra.*

Hence, we reject Star's interpretation of §§ 10–4–609(4) & 10–4–609(5) that would require UM/UIM coverage to be based on the number of uninsured or underinsured drivers causing an accident.

## B.

■ We also reject Star's argument that the Motor Vehicle Financial Responsibility Act, § 42–7–101, et seq., C.R.S. (1996 Cum. Supp.) requires that UM/UIM coverage be based on the number of drivers involved in an accident.

As pertinent here, the Act specifies that a motor vehicle liability policy shall insure the *named insured* and any other person using or responsible for the use of a covered motor vehicle with the permission of the insured, in the amount of not less than $25,000 per person or $50,000 per accident. *See* §§ 42–7–413(1)(a) through (c) and 42–7–103(2), C.R.S. (1996 Cum.Supp.). Section 10–4–609(1) then requires each motor vehicle liability policy to provide to "the persons insured thereunder" uninsured motor vehicle coverage according to the limits set forth in § 42–7–103(2), *i.e.,* not less than $25,000 per person or $50,000 per accident.

Star, however, reads the statute to require "that all insurance companies [must] provide minimum $25/50,000 coverage for *every driver* in the state." (emphasis added) Hence, Star argues, Farmers must provide separate UM/UIM coverage for every driver involved in an accident with its insured, regardless of whether such driver is a named insured. Because Farmers must provide $25,000 coverage to each of the other drivers, the argument proceeds, Star is entitled to at least that amount of coverage through her UM/UIM policy provision for the uninsured driver who stopped in front of her.

Not only has Star provided no support for her interpretation of the statute, but she has also disregarded the statutory language regarding the "named insured" and "persons insured thereunder," which expressly limits the scope of coverage an insurer must provide. *See* § 42–7–413(1)(b) C.R.S. (1996 Cum.Supp.) and § 10–4–609(1), C.R.S. (1994 Repl.Vol. 4A). Thus, we decline to adopt Star's interpretation.

## C.

■ Star next asserts that allowing Farmers to offset the $25,000 received against the uninsured motorist limits violates the pro rata liability statute, § 13–21–111.5. Specifically, she argues that the statute's limitation of joint and several liability requires that she be permitted to recover $100,000 of UM/UIM coverage from each negligent driver causing her injuries. Again, we disagree.

As discussed above, § 10–4–609(5) expressly states that an insurer may offset against the UM/UIM limits the amount received by the insured from all parties liable for the injuries. Thus, this statutory section applies to the total *amount* received by the insured, regardless of the degree of negligence attributable to each tortfeasor. Thus, § 13–21–111.5 is irrelevant in applying the setoff amounts and limits of UM/UIM coverage as provided in § 10–4–609(5). *See Carlisle v. Farmers Insurance Exchange, supra.* We accordingly reject Star's argument that § 13–21–111.5 requires separate UM/UIM recoveries against each driver causing an accident.

Hence, because Farmers' policy is in compliance with the statutory sections addressed above, it does not violate public policy by impermissibly diluting or limiting statutorily mandated coverage. *See Spaur v. Allstate Insurance Co., supra.* Accordingly, we conclude that Farmers properly offset against Star's $100,000 per person UM/UIM limit the amount paid to her by all persons who could have been held liable for the accident—$25,000 for the following driver and nothing for the unknown driver of the vehicle in front of her. *See Carlisle v. Farmers Insurance Exchange, supra* (§ 10–4–609(5) expressly permits an insurer to offset against the combined recovery received by an insured from *all* tortfeasors).

## II.

Star next contends that Farmers' policy definition of "accident or occurrence" runs afoul of case law and public policy because it precludes a finding that she was actually involved in two separate accidents or occurrences. We disagree.

Farmers' policy defines accident or occurrence as "a sudden event, including continuous or repeated exposure to the same conditions, resulting in bodily injury or property damage neither expected nor intended by the insured."

Star argues that Farmers' definition of occurrence to include "continuous or repeated exposure" is contrary to the interpretation of "occurrence" rendered in *Professional Affiliates Co. v. Farmers Insurance Group*, 849 P.2d 819 (Colo.App.1992), There, a motorcyclist either fell or was thrown from a motorcycle, landed under a pick-up truck, and a few seconds later was run over by the truck. For the purpose of determining liability for personal injury protection benefits under the Auto Accident Reparations Act, § 10–4–701, et seq., C.R.S. (1994 Repl.Vol. 4A), the court concluded that the act of leaving the motorcycle and being run over were two separate incidents.

■ Star asserts that *Professional Affiliates* equates "incidents" with "accidents or occurrences," and thus argues that in her case the two incidents of negligence, namely the car stopping in front of her and the second car rear-ending her, are two separate accidents or occurrences for the purpose of computing UM/UIM coverage. We reject Star's interpretation.

First, because *Professional Affiliates* does not address either the term "occurrence" or "accident," it provides no guidance concerning whether such terms may include the phrase "continuous or repeated exposure." Rather, in that case, the issue was whether the motorcycle rider was a pedestrian "occupying ... a vehicle" when he was run over by the truck. *See* § 10–4–703(9), C.R.S. (1987 Repl.Vol. 4A).

Second, the finding in *Professional Affiliates* that two *incidents* occurred does not compel a conclusion that two *accidents or occurrences* transpired here. Even if we assume, *arguendo*, that the car stopping in front of Star and the collision with her car by the following car constituted two separate incidents, that conclusion provides no support for the position that two separate accidents or occurrences also ensued. Rather, one accident, caused by two drivers, occurred here.

Hence, because Star's reliance upon *Professional Affiliates* is misplaced, and because she has provided no other authority in support of her argument, we conclude that Farmers' definition of accident or occurrence does not violate case law or public policy.

Based on the foregoing, we hold that the trial court properly enforced Farmers' policy and correctly concluded that Farmers owed nothing to Star in addition to the $75,000 it had already paid.

The judgment is affirmed.

HUME and NEY, JJ., concur.