**AMERICAN STANDARD INSURANCE COMPANY, a Wisconsin corporation, and American Family Mutual Insurance Company, a Wisconsin corporation, Plaintiffs,**

v.

**Shala SAVAIANO, Defendant.**

**No. CIV.A. 03–RB–93 (MJW).**

United States District Court,
D. Colorado.

Oct. 16, 2003.

Stephanie A. Montague, Lelia Kathleen Chaney, Lambdin & Chaney, LLP, Denver, CO, for Plaintiff.

Stephan C. Kaufman, Kidneigh & Kaufman, P.C., Denver, CO, for Defendant.

## ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

BLACKBURN, District Judge.

Pending are cross-motions for summary judgment in the above-captioned action for declaratory judgment concerning an underinsured motorist (UIM) coverage dispute. Specifically at issue is the UIM coverage afforded to a child of divorced parents under the parents' respective automobile insurance policies where the child is in the custody of one parent and visits the other, and the extent of any such coverage. For the reasons stated, the court grants in part the plaintiffs' and defendant's motions for summary judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Generally, when applying this standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *English v. Colorado Dept. of Corr.*, 248 F.3d 1002, 1007 (10th Cir.2001), *quoting Simms v. Oklahoma ex rel. Dept. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.1999). No material facts are disputed in this particular action. To the extent any party may infer a dispute regarding any particular fact, the court has conformed its view of the facts to the appropriate standards of review. Interpretation of these contracts for insurance is a question of law for the court. *Peterman v. State Farm Mut. Auto. Ins. Co.*, 8 P.3d 549 (Colo.App.2000).

### FACTS

On September 17, 1999, at the age of 16, defendant Shala Savaiano was injured in a single-car motor vehicle accident while a passenger in a vehicle occupied by two other teenagers. Primary among the issues in this case is whether Savaiano is an insured person under the plaintiffs' policies, which involves a factual/legal question concerning Savaiano's residency status within her father's household. Secondarily, the court must allocate what coverage is available.

At the time of the accident, Savaiano's biological parents were divorced and living in separate households. The parties do not dispute that Savaiano was living in her mother's household at the time of the accident. The decree of dissolution of marriage conferred custody of Savaiano to her mother, with reasonable rights of visitation to her father.

Depositions of Savaiano, her parents, and her sister disclose that, on average, Savaiano would see her father six days every week. She stayed overnight at her father's house nearly every weekend from Friday evening through Sunday evening. During the week she would visit her father's home after school to complete her homework and eat dinner, although she would usually sleep at her mother's house on school nights. On average, Savaiano would sleep at her father's house at least once during the school week, and occasionally would sleep at his house two to three times during the school week. Savaiano had followed this unstructured, *ad hoc* visitation pattern since 1989 when her parents first separated. Holidays were spent equally with her parents. During the summer Savaiano would spend more time with her father. In the year prior to the motor vehicle accident, Savaiano spent approximately 40 weekends at her father's house and, on average, lived as much in her father's house as at her mother's.

Savaiano had a key to her father's house and could come and go freely. She received mail and phone calls and visits from friends at her father's house to the same extent as at her mother's. Savaiano's father lives in a loft-type dwelling with an open floor plan and no separate bedrooms. Savaiano slept on a futon couch that was her designated sleeping space. Savaiano's father had furnishings within his home designated for storage of her belongings, such as art supplies, videos, and school books, and space within the loft's closet for her clothing. She kept a full wardrobe of clothing and cosmetics at her father's house. Savaiano's pet dog stayed at her father's home. She also kept her bicycle, snowboard, sports, hiking, and camping gear at her father's home. In her deposition Savaiano testified that "all the basic things that I—all the things that you need to live I had at both houses." SAVAIANO DEPOSITION at 8.

Savaiano's father set rules of discipline for the house, including a curfew. Savaiano was assigned chores at her father's house, such as washing dishes, cooking, doing laundry for herself and her father, and cleaning. Savaiano and her father enjoyed a conventional father-daughter relationship, sharing activities and time together shopping, attending movies, hiking, camping, etc. Her father took responsibility for providing his daughter with lunch money, food, clothing, and medical care, and provided the expected parental guidance and instruction.

Following the motor vehicle accident, the tortfeasor's insurer settled with Savaiano for its $100,000 policy limits. Plaintiff American Standard Insurance Company (American Standard) insures a vehicle owned by Savaiano's mother on a policy that provides $100,000 in UIM coverage. Plaintiff American Family Mutual Insurance Company (American Family) insures a vehicle owned by Savaiano's father on a policy that also provides $100,000 in UIM coverage. Defendant has demanded that plaintiffs pay to her $100,000 under each policy as compensation for her injuries resulting from the motor vehicle accident. Plaintiffs dispute both defendant's entitlement to coverage and the extent of coverage in the event defendant proves entitlement. Plaintiffs initiated this declaratory judgment action to resolve the legal disputes between them and the defendant concerning defendant's rights under the subject policies.

## DISCUSSION

At issue in this case is whether defendant is entitled to coverage under one or more of the subject policies, and, if so, the extent of available coverage. In particular, the general question of the coverage available to the defendant is comprised of three discreet issues:

1. Whether defendant is a resident of her father's household for purposes of coverage under the American Family policy;

2. Whether aggregating the UIM limits of the two subject policies constitutes impermissible stacking in violation of § 10–4–609(2), C.R.S; and

3. If defendant is afforded coverage, whether plaintiffs are entitled to a *pro rata* offset of the tortfeasor's settlement such that the insurer's total remaining liability is equal to $50,000 each.

As to each of these questions, and for the reasons stated herein, the court resolves the issues as follows:

1. Defendant is a resident of her father's household within the meaning of the subject policies;

2. Defendant is entitled to aggregate the UIM limits of the subject policies, for total UIM coverage of $200,000

3. Plaintiff's are entitled to offset the proceeds paid by the tortfeasor against the aggregate UIM coverage; thus, plaintiff's *pro rata* share of the UIM balance due is $50,000 on each policy.

The court discusses each of the matters in issue serially below.

### 1. Residency Status

American Family's policy extends UIM coverage to any "relative" of the named insured, Savaiano's father. The policy defines "relative" as "a person living in your household related to you by blood or marriage." Savaiano is related to her father by blood, and, if she is regarded as a matter of law as "living in" her father's household, she is a "relative" entitled to UIM coverage under the American Family policy.[1]

Though this is a question of first impression for the Colorado judiciary, it is not a novel question of law for the nation's court system. Numerous jurisdictions across the country have addressed the identical legal question, finding, in the context of appropriately apposite facts, that a child of divorced parents who maintains regular contact with both parents' households pursuant to a typical custody/visitation arrangement is regarded as a relative of each parent for insurance purposes.

 This being a question of first impression in Colorado, it is the responsibility of a federal district court hearing a diversity case that "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Colorado state courts have addressed issues related to the one presented in this case. *See Midwest Mutual Insurance Company v. Titus*, 849 P.2d 908 (Colo.App.1993); *Potter v. State Farm Mutual Automobile Ins. Co.*, 996 P.2d 781 (Colo.App.2000); *Kline v. American States Insurance Company*, 924 P.2d 1150 (Colo.App.1996). In the absence of a definitive expression of state law on any matter presented to a federal district court, it is the duty of the court to conscientiously apply state law as the court believes it would be applied in the state courts so that the district court may "make its own determination of what the Supreme Court of [the State] would probably rule in a similar case." *King v. Order of United Commercial Travelers*, 333 U.S. 153, 161, 68 S.Ct. 488, 492, 92 L.Ed. 608 (1948); Wright & Miller, *Federal Practice & Procedure* § 4507 (1982). Accordingly, this court resolves this dispute as it conscientiously believes it would be resolved by the Colorado Supreme Court in accordance with the guidance provided by Colorado's statutes and existing case authorities. *King*, 333 U.S. at 161, 68 S.Ct. at 492.

In *Kline*, divorced parents recovered UIM benefits for the death of their son

---

1. Many judicial opinions on this topic discuss whether the phrases "relative" or "lives in" are ambiguous or unambiguous, or whether this is an inclusionary or exclusionary clause of the policy. These can be distinctions with a difference in some cases as the distinction can determine whether a broad or liberal construction is afforded to the contested insurance language. The court is mindful of the determination of the court in *Potter v. State Farm Mut. Auto. Ins. Co.*, 996 P.2d 781 (Colo.App.2000), that the phrase "living with" is ambiguous and, thus, is to be construed against the insurer, as well as the general principal of law that coverage clauses of insurance policies are liberally construed in favor of the broadest definition of coverage. *Tepe v. Rocky Mountain Hosp.*, 893 P.2d 1323 (Colo.App.1994). For purposes of this decision, the court is not entering a finding regarding the status of the subject clause as ambiguous or not, or inclusionary or not, because, in the court's opinion, it is a distinction without a difference under the facts of this case.

from their separate policies up to the limit permitted for recovery under Colorado's wrongful death statute. The *Kline* court, however, did not have occasion to address the issue of residency or status as a relative as those terms are defined within a policy of insurance. The *Potter* court determined that a "nomadic," adult son was not a resident of his mother's household when his presence in the household was merely transient. The *Potter* court concluded that the phrase "living with" at issue in that case "means intent to dwell or lodge with another person, on a permanent basis and for the foreseeable future." *Potter*, 996 P.2d at 784. *Potter* does not define the terms "living with" or "living in" in the context of an unemancipated minor child alternating residences between divorced parents according to a court ordered parental custody and visitation schedule.

Most apposite of the existing Colorado authorities is the *Titus* decision, which addresses the identical legal issue of a minor child's insured status under the separate policies of divorced parents, albeit in a factual context virtually opposite to the facts in this case. In *Titus* the injured child lived with her mother, who had custody pursuant to the divorce decree. The decree provided the child's father only with supervised visitation rights, which he had not exercised for several months. No evidence of any contacts with the father's household is recited in the opinion. The *Titus* court determined that no UIM coverage benefits were owing to the child. At issue in *Titus* was the definition of the clause "resident of the same household as the named insured." The *Titus* court stated that:

> [W]hether an individual is the "resident of a household" is determined under the facts and circumstances of each case. Important factors include the subjective or declared intent of the individual, the

relation between the individual and the members of the household, the existence of a second place of lodging, and the relative permanence or transient nature of the individual's residence in the household. That the individual is a minor is just one factor to be considered .... Consideration of all relevant factors must reveal "some intended presence in the insured's home."

*Titus*, 849 P.2d at 910. The foregoing factors provide a somewhat non-specific formula for determining residency in the absence of any factual infill in the *Titus* opinion as guidance for applying the formula to more nuanced cases. Most instructive, for purposes of this case, is the *Titus* court's statement that a child:

> [M]ay reside in more than one household if he or she spends substantial time in each under joint custody or visitation arrangements.

*Titus*, 849 P.2d at 910. This latter observation conforms *Titus* to the prevailing "substantial contacts" analysis applied in state and federal courts to cases of this nature.

In *Walbro Corporation v. Amerisure Companies*, 133 F.3d 961 (6th Cir.1998), a nine-year-old child of divorced parents was found to have dual residency in both parents' homes where the parents had a flexible, "open" visitation schedule that resulted in both parents spending substantial time with the child, and where both parents maintained a room with toys, clothes, and other necessities for the child in their separate homes. The *Walbro* court noted that these factors, and other factors, such as whether the child uses the parent's home as a mailing address, whether the child maintains possessions in the parental home, and whether the child is dependent upon the parent for support are "indicia of domicile" in the insured parent's home.

*Walbro,* 133 F.3d at 967. In addition to the contacts the *Walbro* court found to be indicia of domicile, the court's analysis is a product of the application of factors substantively identical to the *Titus* court's four residency factors.

In *Tokley v. State Farm Ins. Co.,* 782 F.Supp. 1375 (D.S.D.1992), the court analyzed a nine-year-old deceased child's estate's entitlement to UIM coverage benefits under an automobile policy issued to his non-custodial father. The *Tokley* court considered both the factual setting and public policy concerns in determining that the child's estate could collect the UIM benefits available under his father's policy. Factually, the *Tokley* court found that the child visited his father two to three weekends a month, that he had his own room in his father's home decorated to his own taste where he kept toys and clothes, and that he would visit his father's home frequently after school, although he generally would not sleep in his father's house during the school week. This visitation arrangement constituted substantial contacts with the father's home such that the child would be deemed to "live with" his father for purposes of coverage under the policy in issue. In so holding, the *Tokley* court presciently observes:

> [T]his nation has experienced an exponential increase in the incidents of divorce, split families, alternative living arrangements, and single parent households. This Court's interpretation of

the phrase "lives with you" should reflect the contemporary realities of family living and should not be narrow and strait-jacketed to apply only to idealized notions of a pristine family unit, harmonious and integrated.

*Tokley,* 782 F.Supp. at 1379. In fact, the *Tokley* decision discounted the determinative relevance of the formal custody arrangement, stating:

> [A] bright line that would vest only a custodial parent with the responsibility of providing adequate insurance coverage for the child would not recognize the contemporary reality that families often separate and the children of such dissociated families must necessarily split their time between households if they are to receive the companionship, communication, and guidance of both parents. The Court can easily foresee circumstances where a custodial parent might be uninsured .... [The] position that only the custodial parent's insurance protects a child could work to create a class of children of divorced parents with no coverage at all unless covered by the non-custodial parent.

*Tokley,* 782 F.Supp. at 1381, *citing Allstate Ins. Co. v. Luna,* 36 A.D.2d 622, 319 N.Y.S.2d 139, 141 (1971). While a child has presumptive residency status in the home of a custodial parent, the decreed arrangement does not work dispositively against the child.[2] Language in the policy

---

2. Nor does the court find highly relevant Savaiano's reported status as her mother's dependent for federal income tax reporting purposes. Internal Revenue Code definitions and standards regarding who is a dependent may or may not be compatible with common law insurance jurisprudence. Which divorced parent claims the dependent tax deduction is sometimes a matter of negotiation between the parents based on financial and economic considerations that are immaterial to formal custody arrangements or insurance considerations. The child's dependant tax status is a nominal, and not necessarily insightful, factor. The dominant focus of the analysis must be based substantively on physical contacts between the child and the parent, as distinguished from objects merely of form such as decree orders, driver's license address designations, registration forms, or tax filings—forms which often permit only a singular designation of status or address, and whose end in requesting designation of status or address is not to effectuate the same pur-

in question is broader than extending coverage simply to a child over whom the named insured has legal custody.

The *Walbro* and *Tokley* decisions adhere to the greater weight of legal authority within the nation favoring the concept that a child of divorced parents living separately has dual residency in both parents' households so long as the child maintains substantial contacts with the non-custodial parent. In cases with facts resembling the facts of this case, the courts have nearly uniformly extended coverage to a relative of the named insured.[3] Where courts have declined to extend coverage to a relative of the named insured, those findings are based on facts readily distinguishable from the subject case, as, for example, in *Titus* where the child had insubstantial connections to the non-custodial parents' household.[4]

■ The undisputed facts here portray a regular and continuous relationship between Savaiano and her father despite the separation of Savaiano's parents. The facts of this case demonstrate that Savaiano intended to live with her mother and father to the fullest extent possible at least during the duration of her minority. Savaiano was not merely a transient or nomadic presence in her father's household;

poses as a policy of insurance. Further, a child can have a primary residence with a custodial parent and a secondary residence with a visitation parent and still have dual residency with each. Dual residency does not require a strict, coequal investment of time in each residency to obtain or preserve that status. Dual residency requires only substantial contacts with both households.

3. *Allstate Insurance Co. v. DiGiorgi*, 9 F.Supp.2d 657 (S.D.W.Va.1998); *Moller v. State Farm Mutual Auto. Ins. Co.*, 252 Neb. 722, 566 N.W.2d 382 (1997); *Limoges v. Horace Mann Ins. Co.*, 134 N.H. 474, 596 A.2d 125 (1991); *Countryside Cas. Co. v. McCormick*, 722 S.W.2d 655 (Mo.Ct.App.1987); *Hartford Cas. Ins. Co. v. Phillips*, 575 S.W.2d 62 (Tex.Civ.App.1978); *Davis v. Maryland Casualty Co.*, 76 N.C.App. 102, 331 S.E.2d 744 (1985); *Garrison v. Travelers Ins. Co.*, 261 N.J.Super. 209, 618 A.2d 387 (1992); *Amica Mut. Ins. Co. v. Donegal*, 376 Pa.Super. 109, 545 A.2d 343 (1988); *Casolari v. Pipkins*, 253 Ill.App.3d 265, 191 Ill.Dec. 580, 624 N.E.2d 429 (1993); *Withers v. State Farm Mut. Auto. Ins. Co.*, 580 So.2d 582 (Ala.1991); *Adams v. Great American Ins. Companies*, 87 Wash.App. 883, 942 P.2d 1087 (1997); *Collins v. State Farm Mut. Auto. Ins. Co.* 902 F.2d 1371 (8th Cir.1990); *Wainscott v. Ossenkop*, 633 P.2d 237 (Alaska 1981); *Row v. United Servs. Auto. Ass'n*, 474 So.2d 348 (Fla.App.1985); *State Farm Mut. Auto. Ins. Co. v. Gazaway*, 152 Ga.App. 716, 263 S.E.2d 693 (1979); *Fidelity Gen. Ins. Co. v. Ripley*, 228 So.2d 238 (La. 1969); *Butler v. MFA Mut. Ins. Co.*, 356 So.2d 1129 (La.1978); *Earl v. Commercial U. Ins. Co.*, 391 So.2d 934 (La.1980); *Bond v. Commercial Union Assur. Co.*, 407 So.2d 401 (La. 1981); *Rosenberger v. American Family Mut. Ins. Co.*, 309 N.W.2d 305 (Minn.1981); *Cobb v. State Sec. Ins. Co.*, 576 S.W.2d 726 (Mo. 1979); *Allstate Ins. Co. v. Luna*, 36 A.D.2d 622, 319 N.Y.S.2d 139 (1971); *Allstate v. Seedhouse*, 61 Ohio Misc. 1, 400 N.E.2d 417 (1979); *Snedegar v. Midwestern Indem. Co.*, 44 Ohio App.3d 64, 541 N.E.2d 90 (1988); *Hartford Cas. Ins. Co. v. Phillips*, 575 S.W.2d 62 (1978); *Aetna Cas. & Sur. Co. v. Shambaugh*, 747 F.Supp. 1203 (N.D.W.Va.1990); *Herbst v. Hansen*, 46 Wis.2d 697, 176 N.W.2d 380 (1970); *Coriasco v. Hutchcraft*, 245 Ill.App.3d 969, 185 Ill.Dec. 769, 615 N.E.2d 64 (1993); *American Family Mut. Ins. Co. v. Thiem*, 503 N.W.2d 789 (Minn.1993); see also 46A C.J.C. Insurance § 1672; 9 *Couch on Insurance* § 123:11; 2 Auto. Liability Ins.3d § 40:3[3]; 7A Am.Jur 2d Automobile Insurance § 318.

4. *Elder v. Metropolitan Property & Casualty Co.*, 851 S.W.2d 557 (Mo.Ct.App.1993); *Delancey v. State Farm Mut. Auto. Ins. Co.*, 918 F.2d 491 (5th Cir.1990); *Gulf Am. Fire & Cas. Co. v. Azar*, 364 So.2d 332 (Ala.1978); *Davis v. Hartford Ins. Co.*, 456 So.2d 302 (Ala.1984); *American Security Ins. Co. v. Hoose*, 416 So.2d 1273 (Fla.1982); *Chapman v. Allstate Ins. Co.*, 306 So.2d 414 (La.1975); *Scott v. Glenn*, 408 So.2d 1167 (La.1981); *State Farm Mut. Auto. Ins. Co. v. Selders*, 187 Neb. 342, 190 N.W.2d 789 (1971); *Pierce v. Aetna Cas. & Sur. Co.*, 29 Wash.App. 32, 627 P.2d 152 (1981).

she had an integrated residency there. Savaiano appears to have spent her time equally between her mother's and father's households. She slept overnight in her father's household some 40 weekends during the year as well as on some week-nights. Savaiano kept personal belongings in her father's house, received mail, phone calls, and visits from friends there, and came and went freely between the two homes. For all intents and purposes, Savaiano's father's household was as much her residence as her mother's.

The court of appeal's decision in *Titus* recognizes that a child of divorced parents may have dual residences in the separate homes of the child's parents. *Titus* also appears to endorse a substantial contacts analysis. With this guidance from the state appellate court, where the extent of the relationship and the contacts between the child and the non-custodial parent are of the duration and regularity presented by this case, this court is of the opinion that the Supreme Court of Colorado would adopt the prevailing view that a child has dual residency where contacts with the non-custodial parent's home are of a substantial nature. Accordingly, the court determines that Savaiano is a relative of both her mother and her father within the meaning of the subject policies.

## 2. Stacking Versus Aggregation

■ Defendant contends that the respective $100,000 limits of the plaintiffs' policies are aggregated for total UIM coverage of $200,000. Plaintiffs argue that aggregation of the UIM limits amounts to stacking prohibited by § 10–4–609(2), C.R.S. Colorado's anti-stacking statute reads in pertinent part:

[A] policy may contain provisions which prohibit stacking the limits of more than one uninsured motorist coverage policy as provided in this section, if such provisions are included in … multiple policies issued by one insurer or an affiliated insurer … to an insured or to a resident relative of such insured. Such provisions shall not prohibit stacking of the … underinsured portions of a policy issued to an insured and a separate policy covering the insured which was not issued to the insured or a resident relative.

§ 10–4–609(2), C.R.S.[5] Little more than reference to the plain language of the statute is required to resolve the plaintiffs' anti-stacking argument, and the operative statutory term is the limiting language *issued to*. By its terms the statute prohibits stacking a policy *issued to* a named insured upon another policy *issued to* the named insured or a resident relative of the named insured. The statute prohibits stacking a policy issued to Savaiano's mother upon a policy issued to Savaiano, or a policy issued to Savaiano's father upon a policy issued to Savaiano. Because Savaiano's mother and father are not resident relatives of one another, the statute does not prohibit the stacking of a policy issued to the mother upon a policy issued to the father.

Plaintiffs' argue that, because Savaiano is defined as an insured under both policies by reason of being a resident relative, she is a resident relative within the contemplation of the anti-stacking statute. Plaintiffs' argument disregards the interaction between the insurance industry custom of distinguishing between a first-party beneficiary (the named insured) and a

---

**5.** Plaintiffs allege that they are affiliated insurers as contemplated by the statute. Defendant offers no counterargument to this assertion. Consequently, the court deems this factual assertion to be either undisputed, or an inference of fact drawn in a light most favorable to the plaintiffs.

third-party beneficiary (one insured under the policy by operation of the policy's definitions and inclusionary clauses) and the obvious legislative intent expressed in the statute's language. The statute is concerned with the stacking of policies *issued to* a named insured and a named insured's resident relative. However, because neither policy was *issued to* Savaiano, the anti-stacking statute is factually and legally inapposite.

To eliminate any confusion on this point, the sentence following the sentence emphasized by plaintiffs endorses the aggregation of UIM coverage available under a named insured's policy with those available under a policy not issued to the named insured but which provides coverage to the insured as a third-party beneficiary. For example, if Savaiano's mother is in an accident while a passenger in Savaiano's father's vehicle, Savaiano's mother could aggregate the UIM coverage from her own automobile policy with the UIM coverage available under the father's insurance. This would be true even if the two policies are issued by affiliated insurers. This illustrates the statute's stated concern with precluding the stacking of policies *issued to* named insureds and/or their resident relatives, as distinguished from the aggregation of policy coverages where a third-party beneficiary is insured under two separate policies coincidentally issued to two different named insureds by the same or an affiliated insurer.

To the extent plaintiffs rely on the anti-stacking statute to oppose aggregation of the UIM limits in this case, plaintiffs' reliance is unavailing. As defined in the statute, stacking is the combination of coverages under policies *issued to* a named insured or the named insured's

resident relative. At issue in this case is an aggregation of UIM coverage not prohibited by statute. To the extent plaintiffs rely upon policy language to oppose aggregation of the UIM limits in this case, plaintiffs point to no statutory authorization for an "anti-stacking" policy clause more restrictive than permitted by statute. *See DeHerrera v. Sentry Insurance Co.*, 30 P.3d 167 (Colo.2001). Because defendant is not seeking to stack the subject policies in a manner precluded by statute, but instead to aggregate the limits, then the total UIM coverage benefit available to the defendant is equal to $200,000. *See Shelter Mutual Insurance Co. v. Thompson*, 852 P.2d 459 (Colo. 1993).

### 3. Offsetting Aggregated Limits

■ Defendant argues that the aggregated limits of $200,000 are owing to her without offset because she demanded $300,000 in damages in her claim against the tortfeasor.[6] The purpose of underinsured coverage is to place the injured party having underinsured motorist coverage in the same position as if the underinsured had liability limits in amounts equal to the insured's UIM coverage, which even then may not necessarily result in the injured party being compensated to the full extent of the injury. *Leetz v. Amica Mut. Ins. Co.*, 839 P.2d 511 (Colo.App.1992). This means that the plaintiffs' coverages are intended to compensate Savaiano as if the tortfeasor had liability limits equal to Savaiano's coverage of $200,000. Pursuant to § 10–4–609(5)(a), C.R.S, plaintiffs are entitled to reduce the $200,000 UIM benefits available to Savaiano by the $100,000 previously paid by the tortfeasor, which leaves Savaiano $100,000 underinsured. Plain-

---

**6.** Defendant's claim of $300,000 in damages in this case is not disputed by the plaintiffs. For purposes of resolving the pending mo-

tions for summary judgment, the court accepts as true defendant's assertion that her damages equal $300,000.

tiffs *pro rata* share of the balance owing is $50,000 per plaintiff. *Compton v. State Farm Mutual Auto. Ins. Co.*, 870 P.2d 545 (Colo.App.1993).[7]

### 4. Attorney Fees

Citing *Allstate Insurance Co. v. Robins*, 42 Colo.App. 539, 597 P.2d 1052 (1979), defendant requests an award of attorney's fees. The *Robins* decision does not support the position that a litigant can recover an award of attorney's fees. Absent a contractual or statutory provision providing for attorney's fees, and defendant cites to no such provisions, the defendant is not entitled to an award of attorney's fees. *Robins*, 597 P.2d at 1053.

**THEREFORE, IT IS ORDERED** as follows:

1. That, as prescribed by Fed.R.Civ.P. 58, judgment shall be entered in favor of the defendant, Shala Savaiano, with respect to the claims of residency and aggregation against the plaintiffs, American Standard Insurance Company and American Family Insurance Company; and

2. That, as prescribed by Fed.R.Civ.P. 58, judgment shall be entered in favor of the plaintiffs with respect to the claim for offset against the defendant; and

3. That the defendant, Shala Savaiano, is awarded her costs to be taxed by the Clerk of the Court pursuant to Fed. R.Civ.P. 54(d)(1) and D.C.Colo.LCivR 54.1.

---

**7.** Plaintiffs' "Other Insurance" clauses establish that defendant cannot recover more than $100,000 in total underinsured benefits from all sources, regardless of the extent of her total damages. *Compton*, 870 P.2d at 547. The court rejects plaintiffs' contention that the other insurance clauses defeat coverage entirely.