STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPANY, an
Illinois corporation, Plaintiff,

v.

Vicki L. LEE, Defendant.

No. CIV.A.03–F–1275(CBS).

United States District Court,
D. Colorado.

Jan. 27, 2005.

Franklin D. Patterson, Gregg E. Kay, Patterson, Nuss & Seymour, P.C., Englewood, CO, Thomas John Seaman, Seaman, Giometti & Murphy, P.C., Greenwood Village, CO, for Plaintiff.

Alan Charles Shafner, Robert A. Wagner, William Lawrence Keating, Fogel, Keating, Wagner, Polidori & Shafner, P.C., Richard Michael Kaudy, Richard M. Kaudy, LLC, Denver, CO, for Defendant.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

FIGA, District Judge.

This matter comes before the Court on the parties' cross-motions for summary judgment in this case involving underinsured motorist coverage. After denying the parties' request to certify questions of law to the Colorado Supreme Court, the Court held oral argument on the motions before the Court on January 13, 2005.

## BACKGROUND

This case arises from a motor vehicle accident that occurred on July 5, 2002. The facts of the accident are not in dispute. Defendant Vicki Lee was riding as a passenger on a motorcycle being driven by Jerry Maggard. The motorcycle was struck by an automobile driven by Sonja Madson. Defendant Lee suffered personal injuries as a result of the accident. At the time of the accident, Ms. Madson was insured under an automobile policy with Progressive Halcyon Insurance Company ("Progressive") with liability limits of $100,000. Progressive paid Defendant Lee the full amount of its liability limit of $100,000 as a result of the injuries suffered by her. It appears undisputed that Defendant Lee suffered damages in excess of $100,000, although the exact amount has not been established.

At the time of the accident Defendant Lee was insured under a State Farm automobile insurance policy with uninsured motorist limits of $100,000 per person. A copy of that policy ("Lee policy") is attached as Exhibit A to plaintiff's motion for summary judgment. At the time of the accident Mr. Maggard had a State Farm motorcycle policy that also had an uninsured motorist limit of $100,000. A copy of that policy ("Maggard policy") is attached as Exhibit B to plaintiff's motion for summary judgment.

Lee settled her claim with Ms. Madson with the permission of State Farm. Thereafter, claiming that she had not been fully compensated for her injuries, Defendant Lee filed a claim with State Farm for underinsured motorist benefits under her policy as well as under Maggard's separate policy. State Farm denied the defendant's claims on the ground that Lee was not injured in an accident involving an "underinsured" motor vehicle according to the policy language and the provisions of

C.R.S. § 10–4–609, because Madson's liability coverage was equal to the underinsured liability coverage under the Lee policy and the underinsured liability coverage provided under the Maggard policy. The Court has not been provided with a copy of the letters denying coverage, but the Plaintiff's Motion and Brief for Partial Summary Judgment on an Issue of Law, filed January 5, 2004, at 2, summarizes the reasons. Defendant Lee took the position that the two policies should be "stacked" for a total of $200,000 in underinsured motorist coverage, and therefore at least $100,000 in underinsured motorist coverage was still available.

On July 16, 2003, Plaintiff State Farm brought this action against Lee and Progressive, seeking declaratory judgment that there was no additional coverage available, and filed an amended complaint on August 28, 2003, which merely corrected the name of the Progressive entity. Progressive was subsequently dismissed from the case by stipulation on November 25, 2003.

On September 26, 2003, Defendant Lee filed an answer and counterclaims. Defendant Lee's counterclaims alleged that she was entitled to receive uninsured motorist benefits from State Farm pursuant to the policies under which she is an insured (Fifth Counterclaim). She also alleged a claim for willful and wanton breach of contract based on State Farm's refusal to pay (First Counterclaim), a claim for "bad faith" breach of an insurance contract (Second Counterclaim), a claim for violation of the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6–1–105, alleging that State Farm's policy language tended

to deceive consumers and resulted in a deceptive trade practice (Third Counterclaim), and a claim asserting that State Farm made "false representations" as to uninsured and underinsured motorist coverage ("UM/UIM") in obtaining Lee's motor insurance business (Fourth Counterclaim).

## THE PENDING MOTIONS

On January 5, 2004, State Farm filed its motion for partial summary judgment (Dkt.# 27), asserting that it is entitled to a declaratory judgment that Defendant Lee is not entitled to any additional underinsured motorist benefits under either the Lee policy or the Maggard policy. The essence of State Farm's argument is that underinsured motorist policies cannot be "stacked" when analyzing whether a vehicle is "underinsured" as defined by C.R.S. § 10–4–609(4). *See* Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion"), p. 19.

On June 7, 2004, Defendant Lee filed her cross-motion for summary judgment (Dkt.# 71). Defendant Lee asserted that she was entitled to "stack her UIM policy with Mr. Maggard's UIM policy for purposes of determining whether she was injured by an underinsured motor vehicle." (Defendant's Motion at 1.) As the parties had extensively briefed the plaintiff's motion for partial summary judgment,[1] Defendant Lee's motion primarily incorporated the arguments she had already advanced in favor of stacking coverage.

---

1. Defendant Lee filed a response brief to plaintiff's motion on February 4, 2004 and plaintiff filed a reply brief on February 27, 2004. Defendant Lee filed a supplemental response on June 2, 2004. Plaintiff filed a supplemental reply and response to defendant's motion on July 30, 2004, supplemental authority on August 17, 2004 and a second supplemental authority on November 5, 2004. Defendant Lee filed a further supplemental response on September 13, 2004, and a further supplemental response on November 16, 2004.

On November 9, 2004, State Farm filed its Second Motion for Partial Summary Judgment (Dkt.# 118) asserting that it was also entitled to judgment as a matter of law on Defendant Lee's willful and wanton breach of contract, bad faith and CCPA counterclaims. Essentially, State Farm argued that denying coverage under an insurance policy and filing a declaratory judgment action against the insured does not, as a matter of law, amount to wilful and wanton breach of contract or "bad faith" denial of coverage. State Farm furthered argued that Defendant Lee's CCPA claim should be dismissed as there was no evidence that any alleged misrepresentation to Defendant Lee satisfied the "public impact" requirement of a CCPA violation, citing to *Rhino Linings USA, Inc., v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 150 (Colo.2003) and *Coors v. Security Life Of Denver Ins. Co.,* 91 P.3d 393, 399 (Colo.App.2003), *cert. granted,* 2004 WL 1146583 (Colo., May 24, 2004) (No. 03SC682), as well as the decision of this Court in *Anderson v. State Farm Mutual Automobile Insurance Co.,* No. 02–F–382 (June 29, 2004).

Defendant Lee filed her opposition to the plaintiff's Second Motion for Summary Judgment on November 24, 2004. With respect to her claim for "bad faith" denial of coverage, she argues essentially that State Farm's "bad faith" is evidenced by the fact that the position it was taking in this case regarding "stacking" of underinsured motorist coverages was the same position it had unsuccessfully taken in several other cases litigated in various Colorado state district courts, and that the state courts had uniformly ruled against State Farm on the issue. With respect to her CCPA claim, Defendant Lee argues that State Farm had represented to her that it would deliver a certain product, but instead substituted a different product (Defendant's opposition at 3). Defendant Lee also argues that the "public impact" requirement is satisfied because the State Farm claims handling "behavior" as outlined in an internal manual reflects that every claim seeking to stack underinsured motorist benefits is handled the same way, and that the effect on "thousands of other policyholders" constitutes a matter of public impact. (*Id.* at 7–8.)

In November 2004, the parties filed requests for this Court to certify to the Colorado Supreme Court a question, or questions, regarding the issue of coverage for Defendant Lee under the underinsured motor vehicle provisions of the policies. It appeared to this Court that the request was in part motivated by three decisions issued by the Colorado Court of Appeals on October 7, 2004, each of which addressed the issue of stacking underinsured motorist coverage, and which were cited in the parties respective supplemental authority filings. This Court carefully considered the parties request for certification, but in an Order entered on December 6, 2004 declined to certify the matter primarily because it appeared that the parties were not in agreement as to the exact question that should be certified. The Court did permit the parties to brief the impact, if any, of the decision of the Colorado Court of Appeals in *Bush v. State Farm,* 101 P.3d 1145, 2004 WL 2278346 (Colo.App., Oct.7, 2004) which the plaintiff and defendant did by filing further supplemental briefs on January 5, 2005 and January 7, 2005, respectively. As noted above, the Court heard oral argument from the parties on January 13, 2005. The Court finds that this matter is a proper one for resolution by summary judgment, as there are no material facts in dispute, and the matter is essentially a question of law.

## ANALYSIS

### I. State Farm's Motion for Partial Summary Judgment on its Claim for Declaratory Judgment and Defendant Lee's Cross-motion for Summary Judgment

#### A. Whether the "Stacking" of Underinsured Motorist Coverages is Required Under the Policies at Issue.

The initial question is whether Defendant Lee has coverage for underinsured motorist benefits under the policy she purchased from State Farm, and under the policy issued to Mr. Maggard. Thus, the Court begins its analysis with a review of these policies' provisions.

■ The Lee policy, effective for the period March 22, 2002 through September 22, 2002, was issued to a Gary Lee. (*See* Declarations Page of Exhibit 1 to plaintiff's motion.) The parties have not explained the relationship between Defendant Vicki Lee and Gary Lee, but the Court assumes, since it is uncontested, that Vicki Lee is an "insured" within the definition of "who is an insured" as it appears at page 14 of this policy. Section III of the policy provides "uninsured motor vehicle coverage." (See pp. 14–17 of Exhibit 1.) The section provides that State Farm will:

> pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of *an uninsured motor vehicle*. The *bodily injury* must be sustained by an *insured* and caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle*."

Exhibit 1, p. 14 (emphasis and italics in original).

The policy then provides that if the vehicle involved in the accident is an " 'underinsured motor vehicle' as described," there is no coverage until there is a settlement or final judgment against the underinsured

driver. (*Id.*) This condition of the policy has been satisfied in this case.

Insofar as relevant to the facts of this case, the policy then defines the term "underinsured" motor vehicle in the following language:

**Uninsured Motor Vehicle**–means:

\* \* \* \* \* \*

3. an "underinsured" land motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury liability at the time of the accident, but the limits of liability for **bodily injury** under such insurance or bonds are:

> a. less than the limits of this coverage under this policy; or

> b. have been reduced by payments to **persons** other than an **insured** in the accident to less than the limits of this coverage under this policy.

*Id.*

Section III of the policy also has a subsection captioned "Limits of Liability." (*Id.* at 15.) Insofar as relevant to the facts of this case, that subsection contains the following provision:

3. The most we will pay under this coverage will be the lesser of:

> a. the difference between the limits of liability of this coverage and the amount paid to the insured by or for any *person* or organization who may be held legally liable for the *bodily injury*; or

> b. the amount of damages sustained but not recovered.

*Id.* at 15.

There is no dispute that Defendant Lee sustained bodily injury within the meaning of the policy, nor is there a dispute that she is an "insured" under this policy. The question is whether she suffered the bodily injury in an accident "arising out of the

operation" of an "uninsured," or in this case "underinsured," motor vehicle, namely the Madson vehicle.

Applying the coverage provision contained in Section III, and the definition of underinsured as it appears in the Lee policy, the Madson vehicle is underinsured if the limits of liability of the Madson policy are "less than the limits of this coverage under this policy." The Lee policy twice uses the word "this" to describe coverage, *i.e.*, "this coverage" and "this policy," and does not refer to any other policy that might have some relationship to the accident. Since the limits of the Madson policy are $100,000, and the limits of "this coverage under this policy" is $100,000, it would appear that there is no underinsurance involved here.

Similarly, applying the "limits of liability" section of the Lee policy, there is no "difference" between the "limits of liability of this coverage [$100,000]" and the "amount paid to the insured by or for any person or organization who may be held legally liable [$100,000]."

Thus, it would seem evident solely from applying the policy language, without regard to industry practices or the statutory provisions, that there is no triggering of the underinsured motor coverage of the Lee policy.

■ Under the Uninsured Motor Vehicle coverage of the Maggard policy, Defendant Lee is an "insured" because she was a person "occupying [Maggard's] car," or in this case his motorcycle, at the time of the accident. (*See* Exhibit 2 to plaintiff's Motion for Partial Summary Judgment, p. 14.) Because the remaining language of the Uninsured Motor Vehicle coverage of the Maggard policy is identical to the Lee policy quoted above, the same result is reached considering only the Maggard policy. Also, because the limits of the Madson policy are $100,000, and the limits of "this coverage under this policy" of the

Maggard policy is $100,000, it would appear solely from the language that there is no underinsurance involved here.

Nevertheless, if Defendant Lee is permitted to "stack" these two policies before determining whether Madson is "underinsured," then the policy limits of the policies under which Defendant Lee is insured total $200,000 instead of $100,000. Stacking is defined in C.R.S. § 10–4–402(3.5) as "aggregating, combining, multiplying, or pyramiding, limits of separate policies providing uninsured and underinsured motorist coverage as provided in section 10–4–609." *See generally,* Couch on Insurance, 3d § 169 (Dec.1998). Colorado is a state that generally has recognized the stacking of applicable motor insurance policies as a matter of public policy (and perhaps as industry practice), absent a prohibition against stacking in legislation or as lawfully permitted in an insurance policy. *See, e.g., State Farm Mut. Auto. Ins. Co., v. Stein,* 940 P.2d 384 (Colo.1997); *Estate of Curry ex rel. Bowen v. Farmers Ins. Exch.,* 101 P.3d 1133 (Colo.App.2004). The concept of stacking under Colorado law has been recognized in Colorado state appellate decisions going back to 1972. *See Thompson v. Certified Indemnity Co.,* 30 Colo.App. 388, 495 P.2d 252 (Colo.App. 1972) *aff'd,* 180 Colo. 341, 505 P.2d 962 (Colo.1973).

■ While it is true that both the Lee policy and the Maggard policy contain language within the "other coverage" subsections of the Uninsured Motor Vehicle sections (*see* Exhibit 1 at 16, ¶ 1 under "Other Coverage;" Exhibit 2 at 16, ¶ 1 under "Other Coverage") that appears to this Court to be "anti-stacking" provisions, those provisions are limited to cases where "two or more motor vehicle liability policies issued by us to *you* or any *relative* providing uninsured motor vehicle coverage apply to the same accident." Maggard

is not a relative of Lee, and thus these provisions do not prohibit stacking under these circumstances.[2]

B. *Whether the "Stacking" of Underinsured Motorist Coverages is Mandated Here Under the Statutes at Issue.*

■ Moreover, even if the policies did contain language which prevented stacking of the Lee and Maggard policies, the effect of the Colorado statute mandating underinsured motorist coverage has to be taken into consideration. As State Farm candidly acknowledges in its motion for partial summary judgment, policy provisions that attempt to dilute what is statutorily mandated coverage will not be enforced (Plaintiff's motion at 6). Therefore, if application of the policy provisions yields a result contrary to any statutory requirement, it may not be enforced.

■ The Court understands Defendant Lee's argument in this case to be that provisions that were added in 1992 to the Colorado uninsured motorist statute, C.R.S. § 10–4–609, require an insurer in the position that State Farm is in here, to "stack" all policies under which an "in-sured" is making a claim when making its determination whether that insured has been injured in an a accident involving an underinsured motorist.[3] Thus, Defendant Lee claims she is entitled to "stack" her policy with the Maggard policy when first determining if she, Madson, is underinsured.

The language added in June 1992 is contained primarily in C.R.S. § 10–4–609(2), and expressly permits uninsured motorist policies to contain what are referred to as "anti-stacking" provisions, but only in the limited circumstance of a single policy covering multiple vehicles, or multiple policies issued by one insurer to an insured or to a resident relative of such insured. As discussed below, this language was apparently inserted by the Colorado Legislature in reaction to the decision issued by the Colorado Court of Appeals in *Thompson v. Shelter Mut. Ins. Co.*, 835 P.2d 518 (Colo.App.1991). In that decision the Court of Appeals held that anti-stacking language contained in the policies at issue would preclude the insured, Thompson, from stacking the liability limits in that case, but further held that such anti-stacking language was "ad-

---

2. In addition, paragraph 2 of the "other coverage" section of each policy contains additional language which Defendant Lee argues to support her position that stacking must be permitted here. Each Policy contains the following provision:

> 2. If Any Other Policies Apply
> Subject to 1 above:
>     *     *     *     *     *     *
> b. If the *insured* sustains *bodily injury* while *occupying* a vehicle not owned by *you, your spouse* or any *relative,* this coverage applies as excess to any uninsured motor vehicle coverage which applies to the vehicle as primary coverage. (Ex. 1 at 16.)

Defendant Lee argues that by describing its coverage as "excess coverage" State Farm necessarily must agree that Ms. Lee's policy can be "excess" to another policy, in this case the policy issued to Maggard (Defendant's response at 28–29). State Farm responds that this provision is not "triggered" unless it has been determined that the Madsen vehicle was an "uninsured" or "underinsured vehicle." (Plaintiff's reply brief at 9–10.) Because this Court reaches its result for other reasons discussed below, it need not and does not address this argument.

3. The Court reaches this understanding of plaintiff's position based on paragraph 21 of her counterclaim, which states: "The purpose of the 1992 legislation was to provide that in circumstances where two unrelated insureds each paid premiums for UM/UIM coverage, the full benefit of both of these coverages would be made available to those who were insureds under those coverages. Defendant Vicki Lee is an insured under the UI/UIM coverages provided by the Maggard Policy and Lee Policy." (Counterclaim, ¶ 21.)

verse to the law and public policy." 835 P.2d at 524. Although the holding of the Court of Appeals was later reversed by the Colorado Supreme Court in *Shelter Mut. Ins. Co., v. Thompson,* 852 P.2d 459 (Colo.1993), the legislature in the interim effected the statutory change referenced above and in Defendant Lee's counterclaim. *See,* 852 P.2d at 463, n. 4.[4]

As part of the 1992 legislative reform, a sentence was added to the same statutory section which expressly prohibits the inclusion of anti-stacking provisions, or anti-stacking language, in policies other than in the limited circumstance described above. That sentence provides: "Such provisions shall not prohibit stacking of uninsured or underinsured portions of a policy issued to an insured and a separate policy covering the insured which was not issued to the insured or a resident relative." C.R.S. § 10–4–609(2). Defendant Lee's position appears to be that this sentence prohibits State Farm from including language in a policy that precludes stacking, except in the "related person" context, and requires State Farm to permit her to "stack" her policy and the Maggard policy to establish the limits of liability to which the Madson policy must be compared in arriving at a determination of underinsurance.

By contrast, State Farm argues that the only language in the statute mandating what underinsured coverage must provide is the language in C.R.S. § 10–4–609(4). That subsection first states: "Uninsured motorist coverage shall include coverage for damage for bodily injury or death which an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle." This provision of the subsection has the effect of requiring that insurers provide what is referred to as "underinsured" coverage along with "uninsured" coverage. The subsection defines what it means by "an underinsured motor vehicle" in the following language:

> An underinsured motor vehicle is a land motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident, but the limits of liability for bodily injury or death under such insurance or bonds are:
>
> (a) Less than the limits for uninsured motorist coverage under the insured's policy; or
>
> (b) Reduced by payments to persons other than an insured in the accident to less than the limits of uninsured motorist coverage under the insured's policy.

C.R.S. § 10–4–609(4).

This language is almost identical to the uninsured motor vehicle section of the Lee policy, with the following difference. In the Lee policy, the limits of liability of the underinsured vehicle are to be compared to "the limits of this coverage under this policy" whereas in the statute's more general language the comparison in subparagraph (a) is to "the insured's policy."

Notwithstanding this difference in terminology, State Farm argues that the statute doe not require alteration of its contract obligations. State Farm argues that this language requires the determination of whether or not underinsurance is present first be made by comparing the tortfeasor's policy limits to the policy limits of its insured's "policy," that is, in the singu-

---

4. Defendant Lee has attached to her supplemental response filed on June 2, 2004, a copy of excerpts from a hearing of the Senate Judiciary Committee held on May 1, 1992, which she offers as the "legislative history" underlying the statutory changes made in 1992. The Court has reviewed the transcript. Because it speaks in generalities that may apply to any uninsured motorist situation, the Court does not find the transcript particularly enlightening to the issue before it here, and does not rely on the statements made by the legislators at that hearing.

lar as it appears in the statute. Defendant Lee, on the other hand, argues that subparagraph (a) of the statute should be read to mean the insured's policy, or policies, arguing that the singular also means the plural, and vice versa, citing to C.R.S. § 2–4–102, which provides that in legislation the "singular includes the plural, and the plural includes the singular." As Lee argues, there are two policies covering her as an insured-her policy and the Maggard policy.

State Farm's argument is not an unreasonable interpretation of the statutory language given the history of the statutory amendments. Nonetheless, for the reasons set forth below, this Court finds that these statutory provisions must nonetheless be construed to require that an insurer permit stacking of underinsured liability coverages originating in two different policies issued by it to unrelated persons that happen to cover one insured person in the case of an accident.

First, the Court understands that C.R.S. § 10–4–609 is generally a statute designed to set forth the minimum mandatory uninsured motorist coverage that must be offered by insurers doing business in Colorado. C.R.S. § 10–4–609(4) was added to the statute in 1983 order to ensure that "underinsured" motor vehicles would also be subject to the minimum mandatory protections required of uninsured vehicles. In *Shelter v. Thompson, supra,* the Colorado Supreme Court expressly concluded that:

> The legislative history of the 1983 amendments indicates that the General Assembly intended to enable an injured insured to recover for loss caused by an underinsured motorist to the same extent that the injured insured would recover for damages caused by an uninsured motorist.

852 P.2d at 463. Thus, under Colorado law Defendant Lee should be placed in the same position in this case as if Madson had been an uninsured motorist.

At the oral argument before this Court, counsel for Defendant Lee presented a depiction of how State Farm's position in this case would apply to different scenarios of uninsurance and underinsurance. One scenario reflected that had the Madson vehicle been "uninsured" (that is, had no insurance whatsoever), State Farm would agree that Defendant Lee would be entitled to recover up to $200,000 pursuant to the Lee and Maggard policies. (This same depiction appears in Defendant's response brief, p. 12.) Counsel for State Farm agreed that the scenario as described by Lee's counsel was the position State Farm was taking.

Accordingly, State Farm's position under the statute is that Defendant Lee would recover up to a total of $200,000 had Madson been uninsured, but only $100,000 under the circumstances of this case where Madson had $100,000 in liability, and therefore was at most an "underinsured" motorist. To this Court, that position does not comport with the conclusion of the *Shelter* decision holding that the purpose of the statute is to enable an injured person to recover for loss caused by an underinsured "to the same extent that the injured insured would recover for damages caused by an uninsured motorist." *Shelter, supra,* 852 P.2d at 463. Thus, State Farm's interpretation is inconsistent with the decision in *Shelter* and must be rejected.

Furthermore, because the statute prohibits anti-stacking provisions in policies issued to non-related insureds, there must be situations where the legislature contemplated that stacking could not be prohibited and therefore was required. Yet, if State Farm is correct that stacking is not allowed under the circumstances presented by this case, it would appear that there is

no situation where stacking would be required. At oral argument, counsel for State Farm was asked to identify situations where stacking would be required, given the position State Farm was taking in this case. Counsel did not identify any situations that this Court found to be plausible examples of what the statute contemplated. This suggests that State Farm's position cannot be a correct application of the statute, for it would be illogical for the statute to include a prohibition on anti-stacking language in certain circumstances, and yet no situation is left where stacking is mandated.

It is true, as State Farm argues, that no Colorado state appellate court has decided this precise question. Nonetheless, as Defendant Lee repeatedly argues, all of the state district courts, faced with scenarios similar to the one present here, have ruled that stacking must be allowed given the statutory prohibition against precluding stacking in cases where the uninsured motorist coverages are contained in separate policies issued to the insured and to a person who is not a resident relative of the insured, as is the case here. The state court decisions cited by Defendant Lee, which this Court finds instructive, are attached to her supplemental response filed June 2, 2004. While those decisions are not necessarily binding on this Court, they are indicative of the prevailing law in Colorado and indicators of what the appellate courts are likely to do when confronted with this issue.

In addition, at least one federal decision from this District appears to reject State Farm's argument. In *American Standard Ins. Co. v. Savaiano*, 298 F.Supp.2d 1092 (D.Colo.2003), Judge Blackburn rejected the insurer's argument that stacking did not apply under the circumstances of the case. In that case the injured person was the daughter of divorced parents, insured under the parents' respective automobile policies, both of which were issued by American Standard. As in the case at bar, each of the parent's policies had $100,000 in uninsured motorist coverage. 298 F.Supp.2d at 1095. As in the case at bar, the tortfeasor was insured for $100,000 and the tortfeasor's insurer paid the policy limit to the injured woman. *Id.* The injured woman demanded that American Standard pay an additional $100,000 pursuant to the underinsured motorist coverage of at least one of the parent's policies.

After finding that the injured woman was insured under each parent's respective policy, the Court concluded that aggregating the two limits of those policies does not constitute impermissible stacking under the statute. 298 F.Supp.2d at 1100. The Court found that the statute would permit the insurer to prohibit stacking a policy of the injured woman and either of the parents, as she was a resident relative of each of them. But the Court held that "Because Savaiano's [the injured woman] mother and father are not resident relatives of one another, the statute does not prohibit stacking of a policy issued to the mother upon a policy issued to the father." *Id.* Similarly, in the instant case where the injured person, Defendant Lee, is not a resident relative of Maggard, the statute would not prohibit stacking of their two policies.

Moreover, in attempting to illustrate the correctness of his ruling, Judge Blackburn states: "For example, if Savaiano's mother is in an accident while a passenger in Savaiano's father's vehicle, Savaiano's mother could aggregate the UIM coverage from her own automobile policy with the UIM coverage available under the father's insurance." 298 F.Supp.2d at 1101. This hypothetical poses facts that are analogous to those presented in the instant case.

For the reasons set forth above, the Court concludes that in the circumstances

presented by this case the stacking of the Lee policy and the Maggard policy must be allowed because otherwise the statutory purpose would be contradicted. Accordingly, the court DENIES State Farm's motion for partial summary judgment on its request for declaratory relief (Dkt.# 27), and GRANTS Defendant Lee's motion for summary judgment (Dkt.# 71) on her claim for declaratory relief that she has the right to stack the Lee and Maggard policies, giving her a claim to underinsured motorist coverage from State Farm of up to $200,000. The Court does not enter any award of damages here, as no such evidence is before it.

## II. State Farm's Motion for Summary Judgment on the Willful and Wanton Breach of Contract and Bad Faith Counterclaims

■ In order to prevail on her counterclaim for bad faith denial of insurance coverage, plaintiff must prove that the "the insurer acted both unreasonably and with knowledge of or reckless disregard of its unreasonableness." *Pham v. State Farm Mut. Auto. Ins. Co.,* 70 P.3d 567, 572 (Colo.App.2003). A wilful and wanton breach of an insurance contract occurs when there is a refusal to pay benefits when due and established, and the insurer acts without justification in disregard of the insured's rights. *Id.* The determination of whether an insurer has acted in bad faith, or wilfully, is one of "reasonableness" under the circumstances. *Id.*

■ Here, as stated above, the Court has already found that State Farm's position, although ultimately found contrary to the intended purpose of the statute, was not an unreasonable position to advance in response to Defendant Lee's claim for coverage based on a stacking of the Lee and Maggard policy. State Farm promptly filed the action seeking declaratory judgment and the filing of such an action can-

not be deemed to be unreasonable, bad faith or wilful and wanton. *See Brandon v. Sterling Colorado Beef Co.* 827 P.2d 559, 561 (Colo.App.1991) ("Resort to a judicial forum is not per se bad faith or unfair dealing on the part of an insurer regardless of the outcome of the suit."). Its conduct as to this claim in the absence of clear precedent was not unreasonable.

Accordingly, the Court GRANTS State Farm's motion for partial summary judgment as to plaintiff's counterclaims for wilful and wanton breach of contract (First Counterclaim) and bad faith denial of insurance coverage (Second Counterclaim).

## III. State Farm's Motion for Summary Judgment on the CCPA Counterclaim

Defendant's counterclaim under CCPA essentially asserts that State Farm made a representation to Defendant Lee that its policy did not contain an "anti-stacking provision" and that its insurance could be stacked, while knowing that in circumstances of this case, it would deny the claim for UIM benefits. (Defendant's counterclaims, ¶¶ 53–54). The counterclaim, however, does not cite to any document in which such representations were made. Defendant's brief in opposition to State Farm's motion for summary judgment attaches two general documents from State Farm's claim manual, Exhibits 8 and 9 to Defendant's opposition brief, but neither document contains the express representations set forth in the counterclaim, and in any event the preface to both documents states that the manual is intended for use by State Farm claim employees, and is not to be circulated to the general public.

■ Nonetheless, Defendant Lee's position apparently is that it is a deceptive practice for State Farm to take the position it has taken in this case and not so

advise persons considering purchasing State Farm policies that it would take such a position. The Court cannot agree that Defendant Lee has demonstrated sufficient evidence to establish such a claim under the CCPA.

First, it appears to the Court that State Farm has been consistent, albeit unsuccessful, in its position in lawsuits that it will not agree to stacking of UIM coverages in cases such as this one. The defendant has not demonstrated that State Farm represented expressly, or even implicitly, to her that it would not take such a position in the event she filed a claim for UIM coverage in the circumstances of this case. Thus, the Court does not see any instance where State Farm has misrepresented its position to plaintiff. For the same reason, the Defendant's Fourth Counterclaim alleging a false representation is not supported by any evidence. Although plaintiff has not expressly moved for summary judgment as to Defendant's Fourth Counterclaim, the Court finds no basis in the record to support such a claim.

Second, as State Farm argues, it is not clear that the defendant's claim satisfies the requirement of "public impact." Defendant suggests argues that State Farm's own statistics show that there are numerous cases where State Farm has denied claims for uninsured or underinsured motorist coverage. Defendant has tendered some statistical information regarding the number of State Farm policies and the number of uninsured and underinsured motorist claims over the past few year (*see* Exhibit 13 to defendant's opposition), but they do not address denied claims or cases relating to the issue of "stacking." State Farm contends, and defendant does not dispute, that of 2200 claims involving uninsured motorist benefits from 1998 to the present, perhaps only 17 claims involved the issue of stacking. Nor does Defendant Lee show that even if

stacking were involved in some or all of those cases, the circumstances of the stacking issue in those claims reflect the same fact scenario as this case. This is an insufficient number to establish public impact. Accordingly, the Court GRANTS State Farm's motion for partial summary judgment as to plaintiff's counterclaim for violation of the CCPA (Third Counterclaim) and the making of a false representation (Fourth Counterclaim).

## CONCLUSION

The court DENIES State Farm's motion for partial summary judgment on its request for declaratory relief (Dkt.27) and GRANTS Defendant Lee's motion for summary judgment (Dkt.# 71) on her claim for declaratory relief that she has the right to stack the Lee and Maggard policies, giving her a claim to uninsured motorist coverage from State Farm of up to $200,000. Defendant is also awarded statutory contract interest on the withheld amount from the date her claim was denied.

The Court GRANTS State Farm's motion for partial summary judgment (Dkt.# 118) as to plaintiff's counterclaims for wilful and wanton breach of contract (First Counterclaim) bad faith denial of insurance coverage (Second Counterclaim) violation of the CCPA (Third Counterclaim) and the making of a false representation (Fourth Counterclaim).

Defendant Lee shall file a motion within ten days if she seeks reinstatement of the Fourth Counterclaim, demonstrating the legal and factual basis for its reinstatement given this order.

The Clerk of the Court shall enter judgment in accordance with this Order.